IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JACOBY L. GARRETT,

    Plaintiff,

v.                                   Civil Action No. 3:19cv835

HAROLD W. CLARKE, individually
and in his official capacity as
Director of the Virginia
Department of Corrections, et al.,

    Defendants.

## MEMORANDUM OPINION

In this action, Jacoby L. Garrett has sued as defendants a number of individuals in the Commonwealth of Virginia Department of Corrections ("DOC"), as well as the Department of Corrections itself, alleging that the Department of Corrections' drug testing policy, as applied to him, offends the Fourth Amendment to the Constitution of the United States. In THE INDIVIDUAL DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS, *WITH PREJUDICE*, COUNT I (IN FULL) AND II (IN REGARD TO DEFENDANT STRETCHER) OF THE PLAINTIFF'S AMENDED COMPLAINT (ECF No. 28), the defendants invoke, as a ground for dismissal, the doctrine of qualified immunity. Once a colorable defense of qualified immunity is put forward, the plaintiff must establish that the defendant's conduct violated a federal statutory or constitutional right and that "the unlawfulness of [the defendant's] conduct was 'clearly established

at the time.'" District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).

In the briefs on the issue of qualified immunity,[1] the parties have disputed the method by which a court is to ascertain whether a constitutional right is "clearly established" for purposes of the qualified immunity analysis. Having reviewed that issue, the Court is of the view that it will be helpful to further proceedings in this case, and perhaps future cases, to set out how the parties must address the question of whether a federal statutory or constitutional right is "clearly established" for purposes of analyzing a claim of qualified immunity.

## BACKGROUND

The facts against which the Motion to Dismiss must be decided are the well-pleaded facts in the AMENDED COMPLAINT (ECF No. 27). The alleged facts, recited in accord with the deference which they are due, are really quite simple. The Virginia Department of Corrections ("DOC") has a policy providing for random drug testing ("OP 135.4"). Refusing to submit to a drug or alcohol test is grounds for termination under OP 135.4 § IV(B)(9).

Garrett, then a telecommunications network coordinator for the DOC, was selected for drug testing on June 28, 2018. He was waiting in an empty office in the Human Resources Office while the

---

[1] ECF Nos. 29, 37 and 38.

administrator of the test retrieved the testing supplies. While waiting, Garrett received a telephone call from his office indicating that someone was looking for him. He believed that that person was his manager. Garrett thus told the administrator of the drug test, Shenda Allen, that his manager was looking for him, and Allen replied, "I'll get you next time," or words to that effect. Garrett left the Human Resources Office and returned to his department. Allen made no effort to stop him. Nor did she inform anyone that he had refused to take the test. Garrett continued to work for the rest of the day during which no one requested him to return to take a drug test. The following day, Garrett left on a pre-approved one-week vacation.

At some point on June 29, 2018, the day after Garrett had been selected to, but did not, receive his test, Allen reported that Garrett had refused to take a drug test. Based on Allen's report, Richard A. Davis, then the Chief Information Officer for DOC, stated that Garrett would be terminated for refusing to take the drug test. Felicia V. Stretcher, Garrett's immediate supervisor, said in an email that Garrett's refusal to submit to the test was a direct violation of DOC policy. Effective July 9, 2018, Stretcher placed Garrett on pre-disciplinary leave. On July 10, 2018, Stretcher issued Garrett a so-called "due process notification" for failure to submit to alcohol and/or drug testing.

3

On July 17, 2018, Stretcher issued a written Notice for the alleged violation of OP 135.4 in failing to take a drug test. Later on July 17, Garrett was informed that, as a result of his alleged failure to submit to a drug test, his employment was terminated effective on July 17.

There are other facts concerning the administrative process in which Garrett thereafter engaged, but they are not pertinent to the purpose of this limited Memorandum Opinion. In any event, it was on the basis of the foregoing facts that Garrett asserts in Count I that Clarke, Davis, and Stretcher in their individual capacities violated his right to be free from unreasonable searches under the Fourth Amendment. In Count II, he alleges that Clarke and Stretcher in their official capacities violated his right to be free from unreasonable searches. In Count III, Garrett seeks a declaration that DOC's drug testing policy, OP 135.4, is unconstitutional as applied to him and that his rights under the Fourth Amendment were violated.

The defendants have filed motions under Fed. R. Civ. P. 12(b)(1) (ECF No. 30) and Fed. R. Civ. P. 12(b)(6) (ECF No. 28). In their motion under Rule 12(b)(6), defendants Clarke, Davis, and Stretcher seek dismissal of Count I based on a claim of qualified immunity.

4

As noted at the outset, in assessing a motion seeking dismissal on the theory of qualified immunity, it is necessary, inter alia, to ascertain whether the alleged constitutional violation was of a federal right that was "clearly established at the time." Reichle, 566 U.S. at 664. In District of Columbia v. Wesby, 138 S. Ct. 577 (2018), the Supreme Court of the United States summarized the basic precepts that govern an analysis of whether a right was clearly established at the time it was alleged to have been violated. In particular, the Court said:

> "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law."

Id. at 589 (citations omitted) (first quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011); then quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

In Wesby, the Supreme Court went on to explain that:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority.'"

5

Id. at 589-90 (citations omitted) (first quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991) (per curiam); then quoting al-Kidd, 563 U.S. at 741-42) (emphasis added).

To determine whether a constitutional right is clearly established for purposes of assessing a claim of qualified immunity, the most important determination is what law or cases make the allegedly violated constitutional right clearly established. The parties are in agreement that there is no specific decision from the Supreme Court of the United States, the United States Court of Appeals for the Fourth Circuit, or the Supreme Court of Virginia that addresses the precise right that is allegedly violated in this case. However, the parties are at substantial issue over what law (in this case, decisional law) makes a federal right a clearly established one. Therefore, it is necessary to address that threshold issue.

### DISCUSSION

In Wesby, the Supreme Court observed, "We have not yet decided what precedents — other than our own - qualify as controlling authority for purposes of qualified immunity." 138 S. Ct. at 591 n.8 (citing Reichle, 566 U.S. at 665-66). So, we have no direct authority on the issue from that quarter. However, the United States Court of Appeals for the Fourth Circuit has addressed it directly.

To begin, in <u>Wallace v. King</u>, 626 F.2d 1157 (4th Cir. 1980), the Fourth Circuit held that:

> [L]aw enforcement officers should not be held personally liable for monetary damages . . . where the controlling law had not been <u>authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals</u>, or the <u>highest court of the state</u> . . . .

<u>Id.</u> at 1161 (emphasis added).

The defendants regard the absence of a decision from one of those three sources as dispositive and thereupon conclude that the right that Garrett seeks to redress here is not clearly established. In support of that argument, the defendants take the teaching of <u>Wallace v. King</u> and other decisions of the Fourth Circuit to mean that, unless there is a decision from the Supreme Court, the Fourth Circuit, or the highest court of the state, a right can never be clearly established. The plaintiff takes the view that a right can be clearly established by decisions from other jurisdictions and, indeed, goes so far as to assert that a right can be clearly established by a decision from a state trial court. These very different positions make it important to define the sources of authority to be used in deciding whether a right is "clearly established" for purposes of deciding whether a defendant is protected by the doctrine of qualified immunity.

7

Although, as noted in Wesby, the Supreme Court has not "yet decided what precedents - other than our own - qualify as controlling authority for purposes of qualified immunity,"[2] the Supreme Court has not been silent on the point. Thus, in Wilson v. Layne, 526 U.S. 603 (1999), the Supreme Court suggested the view that the clearly established analysis could be based upon "a consensus of cases of persuasive authority." In particular, the Supreme Court held:

> Petitioners have not brought to our attention any cases of controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely, nor they have identified a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.

Wilson, 526 U.S. at 617 (emphasis added).

In 2000, in Johnson v. City of Aiken, 2000 U.S. App. LEXIS 3628 (4th Cir. Mar. 9, 2000), the Fourth Circuit, in an unpublished opinion, cited Wilson, and held that:

> The law is clearly established such that an officer's conduct transgresses a bright line when the law has been authoritatively decided by cases of controlling authority in the relevant jurisdiction or when "a consensus of persuasive authority" otherwise necessitates "that a reasonable officer could not have believed that his actions were lawful." Alternatively, the law is clearly established if it is "obvious from the general principles

---

[2] District of Columbia v. Wesby, 138 S. Ct. at 591 n.8.

8

> of the [right at issue] that the conduct of the officers" violated that right.

Id. at *19 (alteration in original) (emphasis added) (quoting Wilson, 526 U.S. at 615-17). More recently, the Fourth Circuit has addressed the issue of the source of the controlling authority in Booker v. S.C. Dep't of Corr., 855 F.3d 533 (4th Cir. 2017). In Booker, the Fourth Circuit held:

> In conducting the clearly established analysis, we first examine "cases of controlling authority in [this] jurisdiction" - that is, "decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose." We "ordinarily" need not look any further than decisions from these courts. But, when "there are no such decisions from courts of controlling authority we may look to 'a consensus of cases of persuasive authority' from other jurisdictions, if such exists."

855 F.3d at 538-39 (alteration in original) (final emphasis in original) (footnote omitted) (first quoting Amaechi v. West, 237 F.3d 356, 363 (4th Cir. 2001); then quoting Owens ex rel. Owens v. Lott, 372 F.3d 267, 279 (4th Cir. 2004)).

Then, in Ray v. Roane, 948 F.3d 222 (4th Cir. 2020), the Fourth Circuit put the matter as follows:

> [T]o determine whether a right was clearly established we first look to cases from the Supreme Court, this Court, or the highest court of the state in which the action arose. In the absence of "directly on-point, binding authority," courts may also consider whether "the right was clearly established based on

9

<u>general constitutional principles</u> or a <u>consensus of persuasive authority</u>."

<u>Id.</u> at 229 (emphasis added) (citations omitted) (quoting <u>Booker</u>, 855 F.3d at 543). Read together, <u>Wilson</u>, <u>Booker</u>, and <u>Roane</u> establish the framework for determining whether a constitutional right has been clearly established for purposes of deciding the availability of qualified immunity.[3] That is the framework that will be used in this case.

The briefs, however, are unclear respecting the positions of the parties on the "clearly established" issue. Accordingly, the parties will be required to file supplemental briefs addressing specifically the question of the law that is asserted to be clearly established so that the Court will be certain to make the analysis in perspective of the correct legal standard and the clearly stated views of the parties.[4] An appropriate Order will issue.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 16, 2021

---

[3] In sum, the rule in this Circuit set out in <u>Wallace v. King</u>, has been replaced by the rule as framed by <u>Booker</u> and <u>Roane</u> which, of course, are necessitated by the Supreme Court decision in <u>Wilson</u>.

[4] Counsel are advised that a fair reading of <u>Wilson</u>, <u>Booker</u>, and <u>Roane</u> teaches that neither a state trial court nor a federal district court opinion is likely to be found to provide controlling authority.