### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

JACOBY L. GARRETT,

     Plaintiff,

v.                             Civil Action No. 3:19cv835

HAROLD W. CLARKE, individually
and in his official capacity as
Director of the Virginia
Department of Corrections, et al.,

     Defendants.

### MEMORANDUM OPINION

This matter is before the Court on THE INDIVIDUAL DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS, WITH PREJUDICE, COUNT I (IN FULL) AND II (IN REGARD TO DEFENDANT STRETCHER) OF THE PLAINTIFF'S AMENDED COMPLAINT (ECF No. 28) ("INDIVIDUAL DEFENDANTS' 12(B)(6) MOTION") and DEFENDANTS' RULE 12(B)(1) MOTION TO DISMISS, WITH PREJUDICE, PLAINTIFF'S AMENDED COMPLAINT (ECF No. 30) ("ALL DEFENDANTS' 12(B)(1) MOTION"). In ALL DEFENDANTS' 12(B)(1) MOTION, the Court is asked to dismiss: (1) all Counts under the Colorado River abstention doctrine;[1] (2) Count I on the basis of Eleventh Amendment immunity; and (3) Count III on the basis that the Court lacks an independent basis for subject-matter jurisdiction. In the INDIVIDUAL DEFENDANTS' 12(B)(6) MOTION, the Court is asked to

---

[1] Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).

dismiss: (1) Count I on the basis of qualified immunity; and (2)
Count II as to Defendant Felicia V. Stretcher for failure to state
a claim under the Ex parte Young doctrine.[2] For the reasons set
forth below, ALL DEFENDANTS' 12(B)(1) MOTION (ECF No. 30) will be
denied, except as to Count III, and the INDIVIDUAL DEFENDANTS'
12(B)(6) MOTION (ECF No. 28) will be denied.

## BACKGROUND

This case arises from the termination of Jacoby L. Garrett's
employment at the Virginia Department of Corrections ("VDOC")
pursuant to VDOC's random drug testing policy. Garrett worked for
VDOC as a Telecommunications Network Coordinator from December 27,
2016 to July 17, 2018. Am. Compl. ¶¶ 7, 90, ECF No. 27. As is the
rule, the facts are recited as alleged and must be presumed to be
true. Favorable inferences go to Garrett, as the non-moving party.

As a Telecommunications Network Coordinator, Garrett's duties
and responsibilities included: "directing and managing IT projects
involving Cisco call manager express/Unity express, video
streaming and conferencing, voice communications including
voicemail and wireless, data connections, troubleshooting
cellphones, managing the DOC cell phone database, setting up desk
telephones, and related IT and networking tasks." Id. ¶ 39. In
fact, it is alleged that Garrett spent most of his time assisting

---

[2] Ex parte Young, 209 U.S. 123 (1908).

other VDOC employees with their mobile devices. Id. He worked primarily at VDOC headquarters, where no inmates are confined. Id. ¶ 40. Garrett did not carry a firearm at work, hold a commercial driver's license, transport offenders, or in any other manner confine, monitor, or oversee inmates. Id. ¶¶ 41-45. Garrett, however, encountered inmates who worked at VDOC headquarters and when his work took him to correctional facilities. Id. ¶ 42. Those encounters are alleged to be "casual," id., but the Amended Complaint does not define what "casual" means.

While Garrett was employed by VDOC, VDOC Operating Procedure 135.4, Alcohol and Other Drug Testing ("OP 135.4"), mandated that "[a]ll wage, full and part time salaried employees . . . are subject to random drug testing." Id. ¶ 54; Am. Compl. Ex. C, at 9, ECF No. 27-3 ("OP 135.4"). OP 135.4 also specifies that failure to report for random drug testing is grounds for termination. Am. Compl. ¶ 56, ECF No. 27; OP 135.4 at 6, ECF No. 27-3.

Just before 2:00 p.m. on June 28, 2018, Shenda Allen, a VDOC personnel assistant, notified Garrett that he had been selected for random drug testing. Am. Compl. ¶ 74, ECF No. 27. At the time, Garrett was in the human resources department and agreed to take the test, so he waited in an empty office while Allen retrieved testing supplies. Id. ¶ 74-75. While waiting for Allen to return, Garrett received a telephone call advising that someone (who Garrett understood to be his manager) was looking for him. Id.

¶ 76. When Garrett next saw Allen, he told her that his manager was looking for him. Id. ¶ 77. Allen told Garrett, "I'll get you next time," and Garrett returned to his department. Id. ¶¶ 77-78.

Neither Allen nor anyone else asked Garrett again that day to take a drug test, and Allen did not tell Garrett or anyone else that he had refused a drug test. Id. ¶¶ 79, 81. The next day, Garrett left for a preapproved vacation scheduled to last a week. Id. ¶ 83.

On June 29, Allen reported that Garrett had refused a drug test. Id. ¶ 84. The same day, Richard A. Davis, then VDOC's Chief Information Officer, stated, based on Allen's report, that Garrett would be terminated for refusing a drug test. Id. ¶ 85. In addition, Felicia V. Stretcher, VDOC's Information Technology Administration and Operations Manager, wrote in an email, "Garrett's failure to submit to the test is a direct violation of the DOC policy." Id. ¶ 86. Stretcher placed Garrett on pre-disciplinary leave effective July 6 or July 9, 2018 for "a potential violation of OP 135.4."[3] Id. ¶ 87; Pl.'s Supp. Submission Opp. Def.'s Mot. Dismiss Ex. A, ECF No. 56-1. Garrett was

---

[3] The Amended Complaint alleges that Stretcher placed Garrett on pre-disciplinary leave effective July 9, 2018. Am. Compl. ¶ 87, ECF No. 27. The memorandum from Stretcher to Garrett placing him on pre-disciplinary leave is dated July 6, 2018 and says it is effective immediately. Pl.'s Supp. Submission Opp. Def.'s Mot. Dismiss Ex. A, ECF No. 56-1. This discrepancy is immaterial to the disposition of either motion under consideration.

subsequently informed that his employment was terminated effective July 17, 2018. Am. Compl. ¶ 90, ECF No. 27.

After Garrett was terminated, he filed an administrative dismissal grievance. Id. ¶ 91. A grievance hearing was held on October 10, 2018. Id. ¶ 92. The hearing officer upheld Garrett's termination on the basis that Garrett's refusal to submit to a drug test was a valid basis for removal under OP 135.4.[4] Id. ¶ 96; Am. Compl. Ex. E at 6, ECF No. 27-5.

Garrett subsequently appealed the hearing officer's decision to the Circuit Court of the City of Richmond. Am. Compl. ¶ 98, ECF No. 27; Mem. Law Supp. Defs.' Rule 12(b)(1) Mot. Dismiss Ex. A, ECF No. 31-1. In that appeal, Garrett, for the first time, raised a Fourth Amendment claim: "that the random drug test that he allegedly refused to take, and which formed the basis of his termination, violates [his] right to be free from unlawful searches and seizures." Am. Compl. Ex. F at 3, ECF No. 27-6 ("First Circuit Court Decision"). "Specifically, [Garrett] argue[d] that his job with VDOC was not a 'safety-sensitive' position that qualifies as an exception to the warrant requirement of the Fourth Amendment." Id.

---

[4] Garrett's termination was initially also based on an alleged violation of OP 135.1 for falsifying records. Am. Compl. ¶¶ 88-89, ECF No. 27. This basis was not upheld at this grievance hearing, id. ¶ 94, and is not at issue in this case.

On April 5, 2019, the Circuit Court found that it had the authority to hear this newly raised argument but remanded the matter to the hearing officer for factual development and a ruling on the Fourth Amendment argument. Am. Compl. ¶ 99, ECF No. 27; First Circuit Court Decision at 9, ECF No. 27-6 ("The matter is remanded to the Hearing Officer to determine whether Grievant's employment with the Virginia Department of Corrections was a 'safety-sensitive job' that qualifies as an exception to the warrant requirement of the Fourth Amendment.").

The parties then appeared before the hearing officer on February 18, 2020. Am. Compl. ¶ 104, ECF No. 27. On August 7, 2020, the hearing officer issued a decision in favor of Garrett, finding that VDOC's attempt to randomly drug test Garrett violated the Fourth Amendment because Garrett was not employed in a safety-sensitive position and thus VDOC's need to drug test Garrett was not substantial enough to outweigh his privacy interest. Pl. Status Report Ex. 1 at 11-13, ECF No. 46-1 ("Second Hearing Officer Decision"). The hearing officer ordered that Garrett be reinstated with back pay and benefits. Pl. Status Report at 1, ECF No. 46; see also Second Hearing Officer Decision at 13, ECF No. 46-1.

On August 24, 2020, VDOC requested an administrative review of this decision by the Office of Employment Dispute Resolution ("EDR") in the Virginia Department of Human Resources Management. Joint Status Report at 1-2, Sept. 1, 2020, ECF No. 47; see also

Joint Status Report Ex. A, ECF No. 47-1. EDR declined to disturb the hearing officer's decision. Joint Status Report at 1, Oct. 30, 2020, ECF No. 49; Joint Status Report Ex. A, at 1, ECF No. 49-1. VDOC then appealed decision to the Circuit Court of the City of Richmond. Joint Status Report at 1-2, Oct. 30, 2020, ECF No. 49. On April 8, 2021, the Circuit Court of the City of Richmond also affirmed the hearing officer's decision on Fourth Amendment grounds, holding that VDOC did not have a special need to test Garrett based on an interest in protecting either public safety or VDOC's classified and/or sensitive data. Pl.'s Rebuttal Br. Ex. A, at 4-8, ECF No. 63-1. The matter is currently pending before the Virginia Court of Appeals. Defs.' Status Report at 2, May 25, 2021, ECF No. 66.

Garrett filed this action in November 2019 against Harold W. Clarke (VDOC Director), Richard A. Davis (VDOC Chief Information Officer), Felicia V. Stretcher (VDOC Information Technology Administration and Operation Manager), and the VDOC. Garrett alleges that OP 135.4 "violated [his] Fourth Amendment rights by subjecting him to random and suspicionless alcohol and drugs tests, with termination as the penalty for refusal, when he did not work in a safety-sensitive position." Am. Compl. ¶ 110, ECF No. 27. Garrett argues that, under Supreme Court and Fourth Circuit precedent, only government employees who work in safety-sensitive positions can be constitutionally subjected to random,

7

suspicionless drug testing. Id. ¶ 27. Specifically, Garrett brings three claims for relief: Count I, brought against Defendants Clarke, Davis, and Stretcher in their individual capacities by way of 42 U.S.C. § 1983,[5] seeks compensatory damages, punitive damages, declaratory and injunctive relief, other equitable relief, and reasonable attorneys' fees and costs; Count II, brought against Defendants Clarke and Stretcher in their official capacities by way of 42 U.S.C. § 1983 and the Ex parte Young doctrine, seeks declaratory and prospective injunctive relief and reasonable attorneys' fees and costs; and Count III, brought against VDOC by way of 28 U.S.C. § 2201, seeks declaratory, injunctive, and further relief. Id. ¶¶ 114-33.

**THE STANDARDS GOVERNING MOTIONS TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

**I.     The Standard Governing Fed. R. Civ. P. 12(b)(1): Lack of Subject-Matter Jurisdiction**

A party may file a motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). If a court finds that it does not have subject-matter jurisdiction over the case or controversy, it must dismiss the action. Arbaugh v. Y & H

---

[5] 42 U.S.C. § 1983 creates no substantive rights. It merely provides that alleged violations of federal rights by state actors may be prosecuted in federal court. Nor does 28 U.S.C. § 2201 create substantive rights or afford federal jurisdiction. It merely permits a certain kind of relief (declaratory) for the violation of rights if the federal court otherwise has subject-matter jurisdiction over the claim being asserted.

Corp., 546 U.S. 500, 514 (2006). Of course, the plaintiff bears the burden of establishing that federal jurisdiction is proper by a preponderance of the evidence. United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009).

Challenges to subject-matter jurisdiction may be made in two ways. First, a factual challenge to jurisdiction can be made under the theory that the complaint's assertion of subject-matter jurisdiction is not true. Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). In that event, a court may consider evidence outside the pleadings and decide disputed issues of fact. Id. Second, as here, a facial challenge may be made by arguing that the complaint does not allege facts that permit the exercise of federal subject-matter jurisdiction. Id. If that type of challenge is raised, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id. (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).

## II. The Standard Governing Fed. R. Civ. P. 12(b)(6): Failure to State a Claim

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "tests the sufficiency of a complaint." Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013). To survive a motion to dismiss, the factual allegations set forth in the complaint must be sufficient to "'to raise a right to relief above the speculative level' and

'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim is 'plausible on its face,' if a plaintiff can demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Nevertheless, "[a] complaint should not be dismissed pursuant to Rule 12(b)(6) . . . unless it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief." Chapman v. Clarendon Nat'l Ins. Co., 299 F. Supp. 2d 559, 562 (E.D. Va. 2004).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." Rockville Cars, 891 F.3d at 145. However, courts need not "accept as true a legal conclusion couched as a factual allegation." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015) (quoting Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014)). And, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Although a court's review is generally limited to the allegations in the complaint, where a copy of a written instrument

is attached as an exhibit to the complaint or incorporated by reference, the instrument is part of the complaint and a court may consider it. <u>Goines v. Valley Cmty. Servs. Bd.</u>, 822 F.3d 159, 166 (4th Cir. 2016); <u>see also</u> Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## DISCUSSION

## I. ALL DEFENDANTS' 12(B)(1) MOTION

For the reasons set forth below, ALL DEFENDANTS' 12(B)(1) MOTION (ECF No. 30) will be denied in part and granted in part. The motion to dismiss all three Counts under the <u>Colorado River</u> abstention doctrine will be denied because the federal and state proceedings are not parallel. The motion to dismiss Count I on the basis of Eleventh Amendment immunity will be denied because Count I alleges a claim against Clarke, Davis, and Stretcher in their individual capacities. The motion to dismiss Count III will be granted because the Court lacks an independent basis for subject-matter jurisdiction to issue a declaratory judgment against VDOC.

a.   **Counts I-III: Abstention Under the <u>Colorado River</u> Doctrine**

The Court is asked to abstain under the <u>Colorado River</u> doctrine from exercising its jurisdiction over this action.[6] Mem. Law Supp. Defs.' Rule 12(b)(1) Mot. Dismiss at 10-15, ECF No. 31 ("12(b)(1) Mem. Supp."). The <u>Colorado River</u> doctrine permits federal courts to abstain from exercising subject-matter jurisdiction when a federal action duplicates pending state proceedings and when "'[w]ise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation' clearly favors abstention." <u>Chase Brexton Health Servs., Inc. v. Maryland</u>, 411 F.3d 457, 463 (4th Cir. 2005) (alteration in original) (quoting <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976)).

However, assessment of a request for abstention begins with the premise that: "pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court

---

[6] Both parties suggest that the <u>Colorado River</u> doctrine may not apply to Count III, which seeks a declaratory judgment, and Defendants suggest that the Court should apply the <u>Brillhart-Wilton</u> doctrine instead. <u>See</u> Pl.'s Br. Opp. Defs.' Rule 12(b)(1) Mot. Dismiss at 10, ECF No. 36 ("12(b)(1) Opp. Br."); Defs.' Reply Pl.'s Br. Opp. Defs.' Rule 12(b)(1) Mot. Dismiss at 12 n.4, ECF No. 39, ("12(b)(1) Reply Br."). However, the Fourth Circuit has held that where, as here, a complaint alleges claims for both declaratory and non-declaratory relief, "<u>Colorado River</u>, not <u>Brillhart/Wilton</u>, must guide a court's decision to abstain." <u>vonRosenberg v. Lawrence</u>, 781 F.3d 731, 735 (4th Cir. 2015).

having jurisdiction." McClellan v. Carland, 217 U.S. 268, 282 (1910). That is because "our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other," Chase Brexton, 411 F.3d at 462, and federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," Colo. River, 424 U.S. at 817; see also Cohens v. Virginia, 19 U.S. 264, 404 (1821) ("[Federal courts] have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."); New Beckley Mining Corp. v. Int'l Union, 946 F.2d 1072, 1073 (4th Cir. 1991) ("A district court has a duty to adjudicate a controversy properly before it . . . .").

Abstention, therefore "is the exception, not the rule." Colo. River, 424 U.S. at 813. Abstention is appropriate "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." Cnty. of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959). When considering abstention, a district court's "task . . . is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction." McLaughlin v. United Va. Bank, 955 F.2d 930, 934 (4th Cir. 1992) (emphasis in

original) (quoting Moses H. Cone Memorial Hosp. & Mercury Constr. Corp., 460 U.S. 1, 25-26 (1983)).

When considering abstaining under the Colorado River doctrine, "the district court must first determine whether the state and federal proceedings are parallel." New Beckley, 946 F.2d at 1073. Only if the proceedings are parallel does a district court consider whether exceptional circumstances exist to justify abstention.

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." Id. The Fourth Circuit has strictly construed this requirement. vonRosenberg v. Lawrence, 849 F.3d 163, 168 (4th Cir. 2017). It is not enough that the parties are "aligned in interest," id., or that the actions "raise similar or overlapping issues," id. at 169, or that there is "[s]ome factual overlap," New Beckley, 946 F.2d at 1074. Rather, the state action must "be an adequate vehicle for the complete and prompt resolution of the issues between the parties." vonRosenberg, 849 F.3d at 168 (emphasis in original) (quoting Moses H. Cone, 460 U.S. at 28). "If there is any serious doubt that the state action would resolve all of the claims, 'it would be a serious abuse of discretion' to abstain." Id. (quoting Moses H. Cone, 460 U.S. at 28).

Here, the federal and state proceedings are not parallel because the state proceedings will not completely resolve the

14

issues between the parties.[7] Even assuming that the legal issues and the parties are identical between the state and federal proceedings, Garrett seeks, and could secure were he to prevail, remedies in federal court to which he does not have access in the state grievance proceeding.

Virginia law provides that a hearing officer can award attorney's fees and "(i) reinstatement to the same position, or if the position is filled, to an equivalent position, (ii) back pay, (iii) full reinstatement of fringe benefits and seniority rights, (iv) mitigation or reduction of the agency disciplinary action, or (v) any combination of these remedies."[8] Va. Code Ann. § 2.2-3005.1(A); see Second Hearing Officer Decision at 14, ECF No. 46-1 (rescinding the Group II Written Notice of disciplinary action with removal, ordering Garrett's reinstatement, directing VDOC to provide Garrett back pay and back benefits "including health insurance and credit for leave and seniority that [he] did not

_____

[7] As Defendants suggest, see, e.g., 12(b)(1) Mem. Supp. at 12 n.4, ECF No. 31, the Colorado River analysis may differ if some of the counts of the Amended Complaint were dismissed. However, because the issue under the Colorado River doctrine is whether the Court should abstain from exercising subject-matter jurisdiction, it would not be appropriate to reach the issue of Colorado River abstention only after deciding other parts of Defendants' motions to dismiss.

[8] For the purposes of determining whether suits are parallel, state administrative proceedings that are adjudicative in nature are considered state suits. Chase Brexton, 411 F.3d at 463 n.2.

otherwise accrue"). A party can appeal to the applicable Virginia circuit court a hearing officer's decision "on the grounds that the determination is contradictory to law," and the circuit court's decision is subsequently appealable to the Virginia Court of Appeals. Va. Code Ann. §§ 2.2-3006(B), 17.1-405.

In this proceeding, Garrett seeks: (1) judgment in his favor on all counts, (2) a declaration that the defendants violated his Fourth Amendment rights on all counts, (3) "a permanent injunction prohibiting Defendants from enforcing OP 135.4 and otherwise implementing any drug testing policy inconsistent with the Constitution" on all counts, (4) "compensatory damages for all pecuniary losses, including, but not limited to, lost wages and legal expenses incurred and to be incurred" on Count I, (5) "compensatory damages for Defendants' violations of Plaintiff's federal constitutional and civil rights, mental and/or emotional distress, inconvenience, humiliation, embarrassment, and reputational injury" on Count I, (6) punitive damages on Count I, (7) attorneys' fees on Counts I and II, (8) expert fees on Counts I and II, (9) prejudgment interest on Count I, and (10) any and all other just and appropriate relief. Am. Compl. at 23-24, ECF No. 27. In addition, Garrett has made a jury demand in this proceeding. Id. at 24.

Garrett cannot receive either punitive damages or compensatory damages for "Defendants' violations of Plaintiff's

federal constitutional and civil rights, mental and/or emotional distress, inconvenience, humiliation, embarrassment, and reputational injury" in the state proceeding. This difference in remedies demonstrates that the proceedings are not parallel. See vonRosenberg, 849 F.3d at 168 ("[E]ven state and federal claims arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies."); Gannett Co. v. Clark. Const. Grp., Inc., 286 F.3d 737, 743 (4th Cir. 2002) (holding that state proceedings where the plaintiff sought a lien and foreclosure and federal proceedings where the plaintiff sought compensatory damages were not parallel); New Beckley, 946 F.2d at 1074 ("A difference in remedies is a factor counseling a denial of a motion to abstain.").

The state proceeding also does not afford Garrett the opportunity for a jury trial, a right to which he is entitled in this proceeding. This difference too counsels against finding that the proceedings are parallel. New Beckley, 946 F.2d at 1074 ("The difference in remedies becomes more pronounced when one suit requires a jury and the other does not . . . .").

Because the state proceeding would not completely resolve all of Garrett's claims, the state and federal proceedings are not parallel, and the restricted abstention permitted under Colorado River is not appropriate.

**b.    Count I: Eleventh Amendment Immunity**

It is also argued, in ALL DEFENDANTS' 12(B)(1) MOTION, that Count I, Garrett's claims against Clarke, Davis, and Stretcher asserted against them in their individual capacities, is barred by the Eleventh Amendment because the real party in interest is the state. 12(b)(1) Mem. Supp. at 15-21, ECF No. 31. The Eleventh Amendment prohibits federal courts from hearing "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. const. amend. XI. The Supreme Court has held that the Eleventh Amendment is an embodiment of the broader principle of sovereign immunity, which precludes federal courts from hearing suits against a state by its own citizens. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984). There are three recognized exceptions to Eleventh Amendment immunity: (1) congressional abrogation of that immunity, (2) state waiver of that immunity, and (3) actions seeking prospective injunctive relief against state officials for ongoing violations of federal law under the Ex parte Young doctrine. See Lee-Thomas v. Prince George's Cnty. Pub. Schs., 666 F.3d 244, 249 (4th Cir. 2012).

A state's sovereign immunity extends to its officials sued in their official capacity. Lewis v. Clarke, 137 S. Ct. 1285, 1292 (2017) (citing Kentucky v. Graham, 473 U.S. 159, 167 (1985)). As the Supreme Court has explained, when state officials are sued in

18

their official capacity, "the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." Id. In contrast, when state officials are sued in their individual capacity, they "'come to court as individuals,' and the real party in interest is the individual, not the sovereign." Id. (citation omitted) (quoting Hafer v. Melo, 502 U.S. 21, 27 (1991)). Thus, a state's sovereign immunity does not extend to its officials sued in their individual capacity.[9] Id.

However, the Fourth Circuit has identified a "distinction between genuine and nominal personal-capacity suits" in the Supreme Court's jurisprudence. Cunningham v. Lester, 990 F.3d 361, 366 (4th Cir. 2021). That is, a state's sovereign immunity extends to state officials in nominal personal-capacity suits – suits that name state officials in their individual capacities but where the state is nevertheless the "real, substantial party in interest." Martin v. Wood, 772 F.3d 192, 195-96 (4th Cir. 2014) (quoting Pennhurst, 465 U.S. at 101).

This distinction must be drawn, according to the Fourth Circuit, because "allowing an action to proceed simply because the

[9] Courts use the terms "personal capacity" and "individual capacity" interchangeably. See, e.g., Hafer, 502 U.S. at 23, 25 (holding that "state officials sued in their individual capacities are 'persons' for purposes of § 1983" but analyzing the features of "personal-capacity" suits).

complaint names a state official in his or her individual capacity 'would be to adhere to an empty formalism.'" Id. at 195 (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 270 (1997)); see also Lizzi v. Alexander, 255 F.3d 128, 137 (4th Cir. 2001) ("The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading." (quoting Coeur d'Alene, 521 U.S. at 270)), overruled in part on other grounds by Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721 (2003). In Martin v. Wood, 772 F.3d 192 (4th Cir. 2014), the Fourth Circuit developed a five-factor test to determine whether a suit against state officials in their individual capacities nevertheless should be treated as a suit against the state for Eleventh Amendment immunity purposes because the state is the "real, substantial party in interest." Id. at 196.

In deciding this motion, the Court is asked to apply the five-factor test of Martin to Garrett's claims in Count I against Clarke, Davis, and Stretcher in their individual capacities. 12(b)(1) Mem. Supp. at 17, ECF No. 31. However, in Adams v. Ferguson, 884 F.3d 219 (4th Cir. 2018), the Fourth Circuit explicitly rejected the argument that the Martin five-factor test should be applied in the context of § 1983 claims. Id. at 225–26. The Court distinguished its opinion in Martin on the basis that Martin involved a Fair Labor Standards Act ("FLSA") claim. Id. at 225. Identifying whether the state is the real party in interest

"makes sense in the context of the FLSA" but not in the context of § 1983:

> "Congress manifested a desire to exclusively define the private remedies available to redress violations of" [the FLSA]. But Congress enacted § 1983 to give private litigants a mechanism to "enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity." Applying the <u>Martin</u> factors, which focus on the official character of the defendant's actions, to § 1983 claims would "absolutely immunize state officials from personal liability for acts within their authority and necessary to fulfilling governmental responsibilities."

Id. at 225-26 (citations omitted) (quoting <u>Kendall v. City of Chesapeake</u>, 174 F.3d 437, 443 (4th Cir. 1999); <u>Hafer</u>, 502 U.S. at 28). Therefore, the Court "refuse[d] to apply to § 1983 claims these factors, which we articulated for use in considering claims under a very different statute, and which would undermine the very purpose of § 1983." Id. at 226.

Because Garrett brings his constitutional claims against Clarke, Davis, and Stretcher in their individual capacities under § 1983, the five-factor <u>Martin</u> test is inapposite.[10] But Defendants

---

[10] Defendants point to the Court's decision in <u>Clowdis v. Silverman</u>, No. 3:15cv128, 2019 WL 1415454 (E.D. Va. Mar. 28, 2019), <u>aff'd</u>, 785 F. App'x 101 (4th Cir. 2019), which applied the <u>Martin</u> five-factor test to claims against state officials in their individual capacities under § 1983. 12(b)(1) Mem. Supp. at 17, ECF No. 31; 12(b)(1) Reply Br. at 13, ECF No. 39. Defendants argue therefore that the Court should apply <u>Martin</u> in this case because, first, this case is more like <u>Clowdis</u> than <u>Adams</u>, and, second, <u>Clowdis</u> was decided by this Court and affirmed by the Fourth Circuit after

21

argue that <u>Adams</u> nevertheless requires the Court to look beyond the form of Garrett's complaint to determine if Garrett's claims against Clarke, Davis, and Stretcher are genuine personal-capacity claims. 12(b)(1) Reply Br. at 13-14, ECF No. 39.

In <u>Adams</u>, the Fourth Circuit did analyze whether the suit was a genuine personal-capacity suit before reaching the issue of whether the <u>Martin</u> test applies to § 1983 claims. The Fourth Circuit noted, "the mere incantation of the term 'individual capacity' is not enough to transform an official capacity action into an individual capacity action." <u>Adams</u>, 884 F.3d at 225 (quoting <u>Lizzi</u>, 255 F.3d at 137)). Therefore, the Fourth Circuit went on to consider whether the complaint's clear statement that the defendant was sued in her individual capacity was undermined by the rest of the complaint or the record. <u>Id.</u> The Fourth Circuit

Adams. <u>Id.</u> at 13-15. As to Defendants' first contention, the Fourth Circuit's opinion in <u>Adams</u> does not suggest that its holding is limited to a subset of § 1983 claims. As to Defendants' second contention, neither this Court's decision nor the Fourth Circuit's decision in <u>Clowdis</u> is binding precedent. <u>Camreta v. Greene</u>, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent . . . even upon the same judge in a different case." (quoting 18 J. Moore et al., <u>Moore's Federal Practice</u> § 134.02(1)(d) (3d ed. 2011)); <u>United States v. Foster</u>, 674 F.3d 391, 402 (4th Cir. 2012) ("[B]y rule we deem unpublished opinions 'non-precedential' . . . ."). Even if the Fourth Circuit's decision in <u>Clowdis</u> were precedential, it is not clear that the question of <u>Martin</u>'s application was raised on appeal in <u>Clowdis</u>. <u>See</u> <u>generally</u> Mem. Supp. Appellant William Clowdis' Informal Br., <u>Clowdis v. Silverman</u>, 758 F. App'x 101 (4th Cir. 2019) (No. 19-1442).

concluded that it was not, citing two facts: first, "the complaint seeks to recover damages only from [the defendant] herself and makes no mention of relief from the state" and, second, "the complaint asserts claims against [the defendant], rather than the current Commissioner." Id.

Defendants argue that, under the logic of Adams, this suit is a nominal personal-capacity suit for three reasons: (1) VDOC is a named defendant in this suit, (2) Garrett initially named Clarke, Davis, and Stretcher in both their official and individual capacities, and (3) Garrett still names both Clarke and Davis in their official capacities. 12(b)(1) Reply Br. at 15, ECF No. 39.

But Defendants' argument omits that, like in Adams, Garrett does not seek damages from either VDOC or Clarke and Davis in their official capacities. Also, like in Adams, Garrett seeks damages from former VDOC Chief Information Officer Davis in his individual capacity, rather than the current VDOC Chief Information Officer.[11] Further, to the extent that Defendants' briefs can be read to argue that Adams establishes a rule that a plaintiff cannot seek in the same suit both retrospective relief from a state official in his or her individual capacity as well as prospective relief from that same state official in his or her official capacity, Defendants go

---

[11] Davis is no longer employed by VDOC. Mem. Law Supp. Defs.' Mot. Dismiss, With Prejudice, Pl.'s Compl. at 18 n.8, ECF No. 5.

too far. Such a rule would run counter to the Federal Rules of Civil Procedure, which expressly allow alternative pleading, Fed. R. Civ. P. 8(a)(3), and would extend Eleventh Amendment immunity beyond the contours established by the Supreme Court. See, e.g., Hafer, 502 U.S. at 30-31 (affirming the Third Circuit's holding that the Eleventh Amendment does not prevent suits against state officials in their personal capacity for damages in a case where a state official was sued in both her official capacity for injunctive relief and her individual capacity for damages). Thus, the Eleventh Amendment does not bar Garrett's claims against Defendants Clarke, Davis, and Stretcher in their individual capacities.

### c.   Count III: Independent Basis of Subject-Matter Jurisdiction

Defendants move to dismiss Count III – Garrett's claim against the VDOC for declaratory and injunctive relief – on the basis that the Court lacks subject-matter jurisdiction to decide Count III. 12(b)(1) Mem. Supp. at 21-22, ECF No. 31. The first issue Defendants' motion raises, easily resolved, is whether the Declaratory Judgment Act is a basis for federal subject-matter jurisdiction. It is well-established that it is not.[12] See Skelly

---

[12] Despite alleging in the Amended Complaint that "[j]urisdiction over Count III is proper under the Declaratory Judgment Act, 28 U.S.C. § 2201," Am. Compl. ¶ 18, ECF No. 27, Garrett implicitly recognizes this in his response brief, citing the rule that for a federal court to exercise jurisdiction in a declaratory judgment

Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950);
Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937).

The second issue Defendants' motion raises is whether Garrett
has properly pled an independent basis for jurisdiction (in this
case, federal question jurisdiction). This question need not be
resolved, however. Even assuming, as Garrett argues, that he has
properly alleged federal question jurisdiction in the Amended
Complaint, VDOC, the only defendant named in Count III, would be
entitled to Eleventh Amendment immunity.

As explained above, under the Eleventh Amendment, a state
cannot be sued in federal court by its own citizens, Pennhurst,
465 U.S. at 98, subject to three exceptions: (1) prospective
injunctive relief against state officials for ongoing violations
of federal law under the Ex parte Young doctrine, (2) state waiver,
(3) congressional abrogation. See Lee-Thomas, 666 F.3d at 249.

In Count III, Garrett, a citizen of Virginia, Am. Compl. ¶ 7,
ECF No. 27, brings a claim for a declaratory judgment against VDOC,
an "executive agency and department of the Commonwealth of
Virginia," id. ¶ 14. Thus, Count III does not fall under the Ex
parte Young doctrine, which is based on the "notion . . . that a

_____

proceeding, "there must be an independent basis for jurisdiction
over the parties." 12(b)(1) Opp. Br. at 20, ECF No. 36 (citing
Kettler Int'l Inc. v. Starbucks Corp., 55 F. Supp. 839, 846 (E.D.
Va. 2014)).

state _officer_ who acts unconstitutionally is 'stripped of his official or representative character.'" _Allen v. Cooper_, 895 F.3d 337, 354 (4th Cir. 2018) (emphasis added) (quoting _Antrican v. Odom_, 290 F.3d 178, 184 (4th Cir. 2002)). Garrett also does not allege that VDOC has waived its Eleventh Amendment immunity. Finally, neither the Declaratory Judgment Act nor § 1983 abrogate states' sovereign immunity. _See_ _Biggs v. N.C. Dep't of Pub. Safety_, 953 F.3d 236, 241 (4th Cir. 2020) ("Congress has not abrogated sovereign immunity for § 1983 suits . . . .") (citing _Quern v. Jordan_, 440 U.S. 332, 345 (1979)); _United States v. South Carolina_, 445 F. Supp. 1094, 1099 (D.S.C. 1977) ("The Declaratory Judgment Act . . . does not explicitly authorize suits against states and therefore cannot be used to circumvent the Eleventh Amendment." (citation omitted)) (citing _Edelman v. Jordan_, 415 U.S. 651 (1974)). Thus, under the Eleventh Amendment, the Court lacks subject-matter jurisdiction to hear Garrett's claim for a declaratory judgment against VDOC in Count III.[13]

## II.   INDIVIDUAL DEFENDANTS' 12(B)(6) MOTION

For the reasons set forth below, the INDIVIDUAL DEFENDANTS' 12(B)(6) MOTION (ECF No. 28) will be denied as to Count I because

---

[13] As Defendants acknowledge, the dismissal of Count III against VDOC does not foreclose declaratory relief as to the other defendants as requested in the RELIEF REQUESTED section of the Amended Complaint or as otherwise authorized by law.

Clarke, Davis, and Stretcher are not entitled to qualified immunity and denied as to Count II because Garrett has properly pled a claim against Stretcher under the Ex parte Young doctrine.

### a. Count I: Qualified Immunity

Defendants move to dismiss Count I, Garrett's claim against Clarke, Davis, and Stretcher in their individual capacities, on the basis of qualified immunity. Having first determined that this is a genuine personal-capacity suit, the Court can consider the defense of qualified immunity. See Graham, 473 U.S. at 166-67 (explaining that officials sued in their personal capacities can assert personal immunity defenses).

The qualified immunity analysis involves "a two-step inquiry, asking 'whether a constitutional violation occurred' and 'whether the right violated was clearly established' at the time of the official's conduct." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 538 (4th Cir. 2017) (quoting Melgar ex rel. Melgar v. Green, 593 F.3d 348, 353 (4th Cir. 2010)); see also District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) ("[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012))). Either step can be addressed first. Booker, 855 F.3d at 538 (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)). The plaintiff bears the burden

of proving that a constitutional violation occurred, and the defendant bears the burden of proving that the violation was not clearly established. Mays v. Sprinkle, 992 F.3d 295, 302 n.5 (4th Cir. 2021) (citing Henry v. Purnell, 501 F.3d 374, 378 (4th Cir. 2007)).

Garrett alleges that VDOC's policy that subjected employees to random, suspicionless drug testing violated his Fourth Amendment rights. See Am. Compl. ¶¶ 110-11, ECF No. 27. The Fourth Amendment protects people from unreasonable government searches. See U.S. Const. amend. IV. Thus, to determine whether a person's Fourth Amendment right to be free from unreasonable searches has been violated by government conduct, a court must answer two questions: whether the government's conduct was a search and, if so, whether the search was unreasonable. See Skinner v. Ry. Lab. Execs.' Ass'n, 489 U.S. 602, 618-19 (1989) ("To hold that the Fourth Amendment is applicable to the drug and alcohol testing prescribed by the FRA regulations is only to begin the inquiry into the standards governing such intrusions. For the Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable." (citations omitted)). There is no dispute whether the method of drug testing employed by VDOC constitutes a search.

To determine whether that search is unreasonable, a court balances the search's "intrusion on the individual's Fourth

Amendment interests against its promotion of legitimate governmental interests." Skinner, 489 U.S. at 619 (quoting Delaware v. Prouse, 440 U.S. 648, 654 (1979)). In general, to be reasonable "a search must be supported . . . by a warrant issued upon probable cause." Nat'l Treasury Emps. Union v. Von Raab, 489 U.S. 656, 665 (1989); accord. Skinner, 489 U.S. at 619. However, a search may be reasonable in the absence of a warrant or individualized suspicion where the government has a special need for a search, beyond the normal need for law enforcement, if the government's interest outweighs a person's privacy interest. Von Raab, 489 U.S. at 665-66 ("[W]here a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement, it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context."); Skinner, 489 U.S. at 624 ("In limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion.").

The Individual Defendants argue that Garrett has not alleged a violation of his Fourth Amendment rights because the government

interest in drug testing Garrett outweighs Garrett's privacy interest. Specifically, the Individual Defendants argue that VDOC had a special need to drug test Garrett for two reasons: because he had access to "sensitive information" and because he had contact with inmates. Mem. Law Supp. Individual Defs.' Rule 12(b)(6) Mot. Dismiss at 14-16, ECF No. 29 ("12(b)(6) Mem. Supp."). The Individual Defendants also argue that Garrett's privacy interest was diminished because he "consented to taking a random drug test while employed at [VDOC]." Id. at 16.

Although the Supreme Court has held that "the Government has a compelling interest in protecting truly sensitive information" that may justify suspicionless drug testing, Von Raab, 489 U.S. at 677, the facts alleged in the Amended Complaint do not establish that Garrett had access to sensitive information. The Amended Complaint alleges that Garrett had access to other VDOC employees' mobile devices while he was assisting them and that he managed the "DOC cell phone database." Am. Compl. ¶ 39, ECF No. 27. However, the Amended Complaint contains no other information about the information on those devices or in the database. See id. The Court cannot conclude that they contained sensitive information based on the Individual Defendants' assertion that they did. See Von Raab, 498 U.S. at 678 (holding that that record was inadequate to determine whether suspicionless drug testing of employees of the United States Customs Service applying for "positions where they

30

would handle 'classified' information is reasonable" and remanding to the Fifth Circuit to examine, *inter alia*, the "criteria used by the Service in determining what materials are classified and in deciding whom to test"). Therefore, at this stage of proceedings, the Court cannot find that the government had a special need to drug test Garrett based on his access to sensitive information.

As for the Individual Defendants' argument that VDOC had a special need to drug test Garrett because he had contact with inmates, the Supreme Court and the Fourth Circuit have held that the government has a special need to drug test employees whose jobs put either their own safety or the safety of others at risk. See Skinner, 489 U.S. at 629-30 (holding that the government has a compelling interest in suspicionless drug testing of railroad employees in "safety-sensitive positions" because of the "risks of injury to others"); Von Raab, 489 U.S. at 670 (holding that the government has a compelling interest in suspicionless drug testing employees of the United States Customs Service who carry firearms because of the risk of injury to others); Chandler v. Miller, 520 U.S. 305, 321-22 (1997) (holding that the government does not have a compelling interest in candidates for state political office because, in part, "those officials typically do not perform high-risk, safety-sensitive tasks"); Thomson v. Marsh, 884 F.2d 113, 115 (4th Cir. 1989) (holding that the government's interest in suspicionless drug testing of employees at a chemical weapons plant

31

is comparable to the safety interest identified in Skinner); Carroll v. City of Westminster, 233 F.3d 208, 211 (4th Cir. 2000) (holding that the government has "a compelling interest in ensuring that the judgment of armed officers is not impaired by the use of illegal narcotics" because of the safety risks).

Correctional institutions engender obvious safety risks. See McDonell v. Hunter, 809 F.2d 1302, 1306 (8th Cir. 1987) ("Correctional institutions are unique places 'fraught with serious security dangers.'") (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)). Among these are the risk created by impaired employees and the risk created by employees smuggling drugs in. See Taylor v. O'Grady, 888 F.2d 1189, 1196-97 (7th Cir. 1989); McDonell, 809 F.2d at 1308. Four Courts of Appeals have held that the government had a special need to drug test correctional institution employees whose jobs implicate these safety rationales. See McDonell, 809 F.2d at 1308; Taylor, 888 F.2d at 1196-97; Int'l Union v. Winters, 385 F.3d 1003, 1012 (6th Cir. 2004); Washington v. Unified Gov't of Wyandotte Cnty., 847 F.3d 1192, 1200-01 (10th Cir. 2017).

Based on the facts as alleged in the Amended Complaint, neither safety rationale applies to Garrett. First, there is no basis to conclude that, as a result of Garrett's access to inmates, his being impaired on the job would have threatened the security of VDOC's correctional institutions. In the majority of cases

32

considered by the Courts of Appeals, the employees were correctional officers, whose job responsibilities directly involved the institutions' security. See McDonell, 809 F.2d at 1307 (noting that the government argued that it had a special need to ensure "prison guards are not working while under the influence of drugs or alcohol" (emphasis added)); Taylor, 888 F.2d at 1191 n.3 (noting that, although the policy at issue ostensibly applied to all employees of the department of corrections, "the plaintiff class consists only of correctional officers and supervisors" and thus the court's decision was limited to those employees); Washington, 847 F.3d at 1195 (noting that the plaintiff, a lieutenant at a county juvenile detention center, alleged that a random drug test violated "his Fourth and Fourteenth Amendment rights" (emphasis added)). In contrast, Garrett was an IT employee. See Am. Compl. ¶ 7, ECF No. 27. Garrett did not carry a firearm, id. ¶ 41, and he had no responsibility for confining, monitoring, or overseeing inmates, id. ¶ 45, even on occasion. Cf. Washington, 847 F.3d at 1200 (holding that the government's interest in drug testing an employee was not diminished because the employee had only sporadic responsibility for securing the correctional institution). Further, unlike correctional officers, Garrett worked primarily at VDOC headquarters, where no inmates are confined, rather than at a correctional institution. Am. Compl. ¶ 40, ECF No. 27. Although Garrett occasionally traveled to VDOC

33

correctional institutions, id. ¶ 42; see also id. ¶ 38 (listing his job duties as requiring 25% travel), he had only "indirect contact" with inmates there, id. ¶ 42. Thus, these facts do not support a conclusion that Garrett had the "unsupervised access to and direct contact with prisoners," which is what animated the Sixth Circuit's holding that even "non-custodial employees who work in the perimeter of a correctional facility" could be subject to suspicionless drug testing. Winters, 385 F.3d at 1010.

Similarly, there is no basis in the Amended Complaint, the sufficiency of which is at issue, to conclude that the government had a strong interest in preventing Garrett from smuggling drugs to inmates. As explained above, based on the allegations of the Amended Complaint, Garrett had only occasional, indirect contact with inmates at VDOC correctional institutions rather than the regular, direct contact that employees had in other cases. Garrett does allege that he had "causal [sic] contact with low-risk offenders who worked in the cafeteria of DOC's headquarters, for example." Am. Compl. ¶ 42, ECF No. 27. It is not clear from the Amended Complaint what "casual" contact means (although it is possible to infer that it means direct but brief interactions such as an inmate ringing up Garrett's lunch), the frequency of this contact, or whether these low-risk offenders are supervised by correctional officers while doing these jobs. Nevertheless, even assuming Garrett had direct, brief, daily contact with inmates not

34

supervised by correctional officers, the fact that VDOC apparently deemed these inmates low-risk enough to work at headquarters without supervision leads to the inference, in favor of Garrett, that VDOC considers any safety risk posed by interactions between VDOC employees and these inmates at headquarters insignificant, its arguments to the contrary notwithstanding.

Because the allegations of the Amended Complaint do not support a finding that the government had an important interest in drug testing Garrett, the Individual Defendants' argument that Garrett's privacy interest was diminished because he had consented to random drug testing at the time he was hired need not be considered. See Chandler, 520 U.S. at 323 ("But where, as in this case, public safety is not genuinely in jeopardy, the Fourth Amendment precludes the suspicionless search, no matter how conveniently arranged."); Winters, 385 F.3d at 1007 ("[A] program may be unconstitutional even if the intrusion upon the individual's privacy rights were minimal, if the government fails to establish a sufficient special need justifying the intrusion without individualized suspicion."). Rather, the Amended Complaint plausibly states a claim that Garrett's Fourth Amendment rights were violated by the application of VDOC's random, suspicionless drug testing policy to him in the absence of an important government interest.

35

Although Garrett has met his burden of stating a plausible claim that the VDOC policy violated his Fourth Amendment rights, the Individual Defendants are nevertheless entitled to qualified immunity if they meet their burden of establishing that it was not clearly established that the VDOC policy violated Garrett's Fourth Amendment rights. However, on the record at this stage of the proceedings, the Court cannot find that the Individuals Defendants have met that burden.

As the Court previously addressed in its February 17, 2021 Memorandum Opinion (ECF No. 59), the Supreme Court has instructed, "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" Wesby, 138 S. Ct. at 589-90 (citations omitted) (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991) (per curiam); Ashcroft v. al-Kidd, 563 U.S. 731, 741-42 (2011)). The Supreme Court has never addressed what precedent qualifies as controlling authority. See id. at 591 n.8. However, the Fourth Circuit has advised:

> [T]o determine whether a right was clearly
> established, we first look to cases from the
> Supreme Court, [the Fourth Circuit], or the
> highest court of the state in which the action
> arose. In the absence of "directly on-point,
> binding authority," courts may also consider
> whether "the right was clearly established

> based on general constitutional principles or
> a consensus of persuasive authority."

Ray v. Roane, 948 F.3d 222, 229 (4th Cir. 2020) (citations omitted)
(quoting Booker, 855 F.3d at 543) (citing Owens ex rel. Owens v.
Lott, 372 F.3d 267, 279 (4th Cir. 2004)).

Following the analysis prescribed by the Fourth Circuit, a
court first looks for "directly on-point, binding authority" from
the Supreme Court, the Fourth Circuit, or the Supreme Court of
Virginia. In this case, there is none. The parties cite decisions
of the Supreme Court and the Fourth Circuit that address the issue
of suspicionless drug testing of government employees in various
contexts.[14] See generally Skinner v. Ry. Lab. Execs.' Ass'n, 489
U.S. 602 (1989) (railroad employees); Nat'l Treasury Emps. Union
v. Von Raab, 489 U.S. 656 (1989) (employees of the United States
Customs Service); Chandler v. Miller, 520 U.S. 305 (1997)
(candidates for state political office); Thomson v. Marsh, 884
F.2d 113 (4th Cir. 1989) (employees at a chemical weapons plant);
and Carroll v. City of Westminster, 233 F.3d 208 (4th Cir. 2000)
(a city police officer). But none of those decisions address the
specific factual circumstances present here – a suspicionless drug
testing policy applied to an employee of a correctional
institution.

---

[14] The parties agree that there is no relevant case from the Supreme
Court of Virginia.

Of course, "the absence of controlling authority holding identical conduct unlawful does not guarantee qualified immunity." Owens, 372 F.3d at 279; see also Wilson v. Layne, 526 U.S. 603, 615 (1999) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ."); Amaechi v. West, 237 F.3d 356, 362 (4th Cir. 2001) ("[T]he exact conduct at issue need not have been held unlawful for the law governing an officer's actions to be clearly established."). A court must also consider, following the analysis prescribed by the Fourth Circuit, whether the right was clearly established based a consensus of persuasive authority or general constitutional principles. Ray, 948 F.3d at 229.

The general constitutional principle relevant here – that suspicionless drug testing of government employees passes Fourth Amendment muster only when important government interests outweigh employees' privacy interests – clearly establishs that in the absence of an important government interest, the Fourth Amendment forbids suspicionless drug testing of government employees. See Ray v. Roane, 948 F.3d 222, 230 (4th Cir. 2020) (holding that it was clearly established "that shooting a privately owned dog, in the absence of any safety rationale at all, is unreasonable" based on the general constitutional principle that "privately owned dogs are protected under the Fourth Amendment . . . and the

38

reasonableness of the seizure of a dog depends on whether the governmental interest in safety outweighs the private interest in a particular case"). As discussed above, the facts alleged in the Amended Complaint cannot support a finding that the government had an important interest in drug testing Garrett. Therefore, the Individual Defendants have not met their burden at this stage of the proceedings. That is certainly so where, as here, the availability of qualified immunity turns on the detailed facts respecting whether Garrett's job was safety sensitive.

The Fourth Amendment balancing test is highly fact-intensive. See Taylor, 888 F.2d at 1194 (noting that factual "distinctions comprise the critical border between an employer's reasonable intrusion upon its employees' privacy under the fourth amendment and an unconstitutional foray."). Discovery might well reveal that the facts are not as they are alleged in the Amended Complaint, and those facts may change the qualified immunity analysis. Thus, the Individual Defendants motion to dismiss Count I on the basis of qualified immunity will be denied without prejudice to the assertion of the defense of qualified immunity in a motion for summary judgment if the factual record permits the reassertion of qualified immunity.

b.   **Count II: Failure to State a Claim Under the <u>Ex parte</u> <u>Young</u> Doctrine**

The Court is asked to dismiss Count II, Garrett's claim for declaratory and injunctive relief against Clarke and Stretcher in their official capacities, as to Stretcher because Garrett does not allege that Stretcher "has the authority to adopt or otherwise change the drug testing policy for the entire Department."[15] 12(b)(6) Mem. Supp. at 17, ECF No. 29. Garrett argues that it is sufficient that he alleges that Stretcher is responsible for "implementing and enforcing the DOC's drug testing policies as to Garrett." Pl.'s Br. Opp. Individual Defs.' Rule 12(b)(6) Mot. Dismiss at 21, ECF No. 37.

Under the exception to Eleventh Amendment immunity established in <u>Ex parte Young</u>, 209 U.S. 123 (1908), state officials can be sued in their official capacities for prospective relief from ongoing violations of federal law. <u>Allen v. Cooper</u>, 895 F.3d 337, 354 (4th Cir. 2018). For this exception to apply, the state official sued must have "some connection with the enforcement of the act" that is alleged to be unconstitutional. <u>Hutto v. S.C. Ret. Sys.</u>, 773 F.3d 536, 550 (4th Cir. 2014) (quoting <u>Ex parte Young</u>, 209 U.S. 123, 157 (1908)). This requirement "prevents parties from circumventing a State's Eleventh Amendment immunity."

---

[15] The Individual Defendants do not move to dismiss Count II as to Clarke.

Id. Thus, "a governor cannot be enjoined by virtue of his general duty to enforce the laws" nor can an attorney general "where he has no specific statutory authority to enforce the statute at issue." Id. (citing Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 331 (4th Cir. 2001); McBurney v. Cuccinelli, 616 F.3d 393, 400 (4th Cir. 2010)). In contrast, in Bostic v. Schaefer, 760 F.3d 352 (4th Cir. 2014), the Fourth Circuit held that the plaintiff could sue to enjoin the defendant, a state circuit court clerk, from enforcing Virginia's laws prohibiting same-sex marriage. Id. at 371 n.3. The Fourth Circuit held that the clerk bore "the requisite connection to the enforcement of the Virginia Marriage Laws due to his role in granting and denying applications for marriage licenses." Id.

Here, Garrett has sufficiently alleged a connection between Stretcher and the enforcement of VDOC's allegedly unconstitutional drug testing policy. Garrett asks the Court to enjoin "Defendants from enforcing OP 135.4 and otherwise implementing any drug testing policy inconsistent with the Constitution." Am. Compl. at 23, ECF No. 27. He also alleges that Stretcher is "responsible for implementing, overseeing, and enforcing DOC's policies and procedures within the Corrections Technology Services Unit of DOC, including the subject drug testing policies and procedures that give rise to this action." Id. ¶ 13. Further, "Stretcher was directly responsible for implementing, overseeing, and enforcing

41

the DOC's drug testing policies as to Mr. Garrett." Id. Garrett also specifically alleges that it was Stretcher who placed him on "pre-disciplinary leave related to a report of a potential violation OP 135.4." Id. ¶ 87.

The argument that Garrett must allege that Stretcher "has the authority to adopt or otherwise change the drug testing policy for the entire Department" is unavailing in light of the Fourth Circuit's decision in Bostic.[16] A state circuit court clerk does not have the authority to adopt or change marriage laws throughout the state of Virginia. Nevertheless, the Fourth Circuit held that the clerk's job duties – merely granting and denying marriage license applications – was sufficiently connected to the enforcement of Virginia's marriage laws such that a suit to enjoin the clerk's enforcement of those laws could proceed. Bostic, 760 F.3d at 371 n.3. Although Stretcher may not have the authority to adopt or change VDOC's drug testing policy, Garrett has alleged that she was responsible for enforcing it, including through placing him on leave for an alleged violation of that policy. Because Garrett has alleged the requisite connection between

_____

[16] Neither of the cases that the Individual Defendants cite – Woods v. S.C. Dep't of Health & Human Servs., 3:18cv834, 2019 WL 8403039 (D.S.C. Dec. 19, 2019) and Kobe v. Haley, 666 F. App'x 281 (4th Cir. 2016) – address the issue of whether a plaintiff can seek injunctive relief from a current state official who enforces a policy or law but cannot change it.

Stretcher and the enforcement of VDOC's drug testing policy, as required under Ex parte Young, Count II against Stretcher can go forward.

**CONCLUSION**

For the foregoing reasons, THE INDIVIDUAL DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS, WITH PREJUDICE, COUNT I (IN FULL) AND II (IN REGARD TO DEFENDANT STRETCHER) OF THE PLAINTIFF'S AMENDED COMPLAINT (ECF No. 28) will be denied, and DEFENDANTS' RULE 12(B)(1) MOTION TO DISMISS, WITH PREJUDICE, PLAINTIFF'S AMENDED COMPLAINT (ECF No. 30) will be denied, except as to Count III.

It is so ORDERED.

                                    /s/    REP
                           _____
                           Robert E. Payne
                           Senior United States District Judge


Richmond, Virginia
Date:  August 4, 2021