**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

JACOBY L. GARRETT,

    Plaintiff,

v.                             Civil Action No. 3:19-cv-835

CHADWICK DOTSON, <u>ET AL.</u>,

    Defendants.

### MEMORANDUM OPINION

This matter is before the Court on DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT II OF PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P 12(C) [sic] (ECF No. 135) (the "RULE 12(c) MOTION") and PLAINTIFF'S MOTION TO AMEND COMPLAINT (ECF No. 146).

The Court has reviewed the RULE 12(c) MOTION, the supporting (ECF No. 136), response (ECF No. 139), and reply (ECF No. 140) memoranda, and heard oral argument on that motion on March 6, 2024.

Subsequent to that hearing, the Court ordered, received, and has reviewed PLAINTIFF'S BRIEF ON SUBJECT MATTER JURISDICTION AND THE ISSUE OF WHETHER HIS CLAIMS REMAIN JUSTICIABLE (ECF No. 145), and the response (ECF No. 150) and reply (ECF No. 153) memoranda.

Finally, the Court has reviewed PLAINTIFF'S MOTION TO AMEND COMPLAINT (ECF No. 146), and the response (ECF No. 149) and reply (ECF No. 152) memoranda.

For the reasons set forth below, this case will be dismissed by the Court, *sua sponte*, as moot. Accordingly, the RULE 12(c) MOTION (ECF No. 135) will be denied as moot.

Additionally, PLAINTIFF'S MOTION TO AMEND COMPLAINT (ECF No. 146) will be denied because amendment would be futile.

### BACKGROUND

The procedural history of this case is long and involves intertwining state and federal litigation. For the purposes of deciding the matters now pending, the relevant history is as follows.

Jacoby L. Garrett brought this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, alleging that the defendants violated his rights under the Fourth Amendment to the United States Constitution. Specifically, he sought relief from Harold W. Clarke,[1] the Director of Corrections for the Virginia Department of Corrections ("VDOC"), Richard Davis, the Chief

---

[1] Originally, the relevant named defendant in this suit was Harold W. Clarke, the former Director of the Virginia Department of Corrections. Since this case commenced, Mr. Clarke has left the Department and Chadwick Dotson has succeeded him. Dotson has therefore been substituted in this case. Order of October 11, 2023 (ECF No. 128). Any mention of Clarke can now be read as Dotson.

Information Officer for VDOC, Felicia Stretcher, the Information Technology Administration and Operations Manager for VDOC, and VDOC itself. Plaintiff's Amended Complaint ("Am. Compl.") at ¶¶ 11-14 (ECF No. 27).

In Count I of the Amended Complaint, Garrett presented a § 1983 Fourth Amendment violation claim, against Clarke, Davis, and Stretcher in their individual capacities, on the basis of VDOC's drug testing policy, Operating Procedure 135.4 ("OP 135.4" or the "Policy"), as applied to Garrett. He sought damages, declaratory and injunctive relief, and attorneys' fees and costs. Am. Compl. at ¶¶ 114-121. In Count II, Garrett alleged the same claim against just Clarke and Stretcher, in their official capacities, seeking prospective injunctive and declaratory relief and attorneys' fees and costs. Id. at ¶ 122-128. In Count III, Garrett sought a Declaratory Judgment, against VDOC only, under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., as to the unconstitutionality of the Policy as applied to Garrett. Id. at ¶¶ 129-133. The Policy required Garrett, along with all other VDOC employees, to submit to random drug testing. See OP 135.4, ECF No. 27-3.

The individual defendants moved to dismiss Count I in full, asserting, in part, the defense of qualified immunity. ECF No. 28. The Court held that the defendants did not enjoy qualified immunity and denied that motion. Garrett v. Clarke, 552 F. Supp.

3d 539, 556-62 (E.D. Va. 2021). But on interlocutory appeal, the Fourth Circuit reversed, found that the individual defendants did have qualified immunity (holding, in part, that this Court had defined Garrett's right at too high a level of generality), and dismissed Count I of the Amended Complaint. Garrett v. Clarke, 74 F.4th 579, 588 (4th Cir. 2023). Garrett petitioned the Court of Appeals for a rehearing en banc, but the court denied that petition. ECF No. 133.

Also, all Defendants filed a MOTION TO DISMISS (ECF No. 30) as to Count III, which was granted because there was no independent jurisdictional basis for a declaratory judgment, as to VDOC. Garrett, 552 F. Supp. 3d at 555-56. Therefore, Count II, a claim under 42 U.S.C. § 1983 alleging a Fourth Amendment violation as applied to Garrett, against Dotson and Stretcher in their official capacities,[2] is the only remaining claim in this case.[3]

\* \* \*

---

[2] Count II, which seeks prospective declaratory and injunctive relief (plus attorneys' fees and costs pursuant to 42 U.S.C. § 1988), is based on the exception to Eleventh Amendment sovereign immunity set forth in Ex parte Young, 209 U.S. 123 (1908). See Alden v. Maine, 527 U.S. 706, 747 (1999) (holding that under "Ex parte Young, . . . certain suits for declaratory or injunctive relief against state officers must . . . be permitted . . .").

[3] Because Count II is only against Dotson and Stretcher, any reference to "Defendants" hereinafter only refers to Dotson and Stretcher.

From 2016 to 2018, Garrett was a Telecommunications Network Coordinator for VDOC. Am. Compl. at ¶ 7. Garrett allegedly failed to submit to a drug test on June 28, 2018, in violation of OP 135.4. Id. at ¶ 90. On July 17, 2018, VDOC fired Garrett for failing to submit to the June 28 drug test. Id. at ¶ 90.

The parties dispute whether the failure to submit to the drug test actually occurred. According to Garrett, he showed up for the test when he was notified. But, while waiting to actually take the test, he received a call from his manager directing him to attend to a problem. Id. at ¶¶ 75-76. Garrett says that he told the test administrator that his manager needed him to come back, to which the administrator replied, "'I'll get you next time,' or words to that effect." Id. at ¶ 77. Garrett was not tested the rest of that day and then left for a pre-approved, week-long vacation the day after. Id. ¶¶ 81, 83. Id. In contrast, Defendants argue that Garrett had left the test site and not taken the test, which was his responsibility once he was informed that a test was required, and which failure was grounds for his dismissal pursuant to OP 135.4. ECF No. 29 at 2-4. While he was on vacation, VDOC initiated dismissal procedures against him for missing the test and ultimately fired him.

Years of litigation in Virginia courts and administrative proceedings have preceded and co-occurred with this case. Before bringing this § 1983 suit, in 2018, Garrett appealed his firing

5

through the state employee grievance procedures provided by Virginia Code Section 2.2-3000 *et seq*. First, he filed a dismissal grievance in accordance with Va. Code § 2.2-3003 and had a hearing on October 10, 2018. Am. Compl. at ¶ 91. At his grievance hearing, Garrett factually disputed that he did not submit to the drug test. Decision of Hearing Officer of October 30, 2018 (ECF No. 27-5) at 6-7 [hereinafter "First Grievance Decision"]. The only Constitutional challenge Garrett raised was a denial of due process. Id. The Hearing Officer rejected Garrett's arguments and affirmed Garrett's firing on October 30, 2018. Id. at 7.

Next, Garrett appealed that decision to the Circuit Court for the City of Richmond, sitting as an appellate court for grievance hearings pursuant to Va. Code § 2.2-3006. Am. Compl. at ¶ 98. There, Garrett, for the first time, raised a new Constitutional argument: a Fourth Amendment violation. Garrett v. Dep't of Corr., 102 Va. Cir. 53, at *2 (City of Richmond 2019). He asserted that his random drug test was an unreasonable search because he did not hold a "safety-sensitive" position. Id. The Circuit Court held that: (1) it could hear Garrett's newly raised Fourth Amendment argument; (2) it could remand the matter to the Hearing Officer to develop the factual record on that argument; and (3) it could then render a new decision based on that record. Id.

6

On remand, the Hearing Officer ordered that Garrett be reinstated. Remand Decision of Hearing Officer at 10-12 (ECF No. 46-1) [hereinafter "Remand Decision"]. After hearing new evidence, the Hearing Officer found that Garrett's position was not safety-sensitive. Therefore, the Hearing Officer held that VDOC's attempt to randomly drug test Garrett ran afoul of the Fourth Amendment. Id. at 13. The Office of Employment Dispute Resolution ("EDR") affirmed the decision to reinstate Garrett on the basis of that reasoning, as did the Circuit Court. ECF No. 49-1; Dep't of Corr. v. Garrett, 108 Va. Cir. 57 (City of Richmond 2021).

But the Court of Appeals of Virginia reversed. Dep't of Corr. v. Garrett, Nos. 0456-21-2, 0796-21-2, 2022 WL 677897 (Va. Ct. App. Mar. 8, 2022) [hereinafter "Court of Appeals Decision"]. It held, following the state's "tripartite review procedure," that the Circuit Court was limited to determining "whether the grievance determination [was] 'contradictory to law,'" and that the Circuit Court had exceeded its role when it remanded the case for further proceedings before the Hearing Officer. Id. at *2 (citing Passaro v. Va. Dep't of State Police, 67 Va. App. 357, 367 (2017) [hereinafter "Passaro State Court Decision"). The Court of Appeals held that, on his initial appeal, Garrett bore the burden of providing a record from which the Circuit Court sufficiently could determine whether the

7

Hearing Officer had erred. Id. at *3 (collecting cases). Because Garrett had not raised his Fourth Amendment argument in the grievance hearing, he had failed to carry that burden. Id. at *4. Therefore, said the Court of Appeals, the Circuit Court had erred in remanding the case to develop the factual record beyond what Garrett presented in the original grievance hearing. Id. So, the court remanded the case to the Circuit Court for a new ruling, the basis of which was to be confined to the record as initially presented. Id.

On remand, the Circuit Court dismissed the appeal on May 8, 2023. Garrett v. Va. Dep't of Corr., ECF No. 115-1, at 4 [hereinafter "Final Circuit Court Opinion"]. The Final Circuit Court Opinion found that the grievance hearing record was bare of any support for Garrett's Fourth Amendment argument. Id. Thus, Garrett did not carry his burden and his argument failed. Garrett has since stated that he will not pursue any further appeal in state court. ECF No. 124 at 2.

As of March 1, 2022, VDOC has adopted a new drug testing policy, also named Operating Procedure 135.4, *Alcohol and Other Drug Testing* ("New OP 135.4"). ECF No. 145-1. New OP 135.4 distinguishes between employees in safety-sensitive positions and those in non-safety-sensitive positions, and only requires random drug testing from those in safety-sensitive positions. Id. at 4-5, 12. Safety-sensitive positions are defined as:

> A position in which: (i) a drug impairment constitutes an immediate and direct threat to public, employee, or inmate/probationer/ parolee security, health or safety; and/or (ii) illegal or unlawful drug use could make the employee susceptible to corruption and thus poses an unacceptable risk to the [VDOC] on issues of security and civil liability and also undermines [VDOC's] ability to perform its mission.

ECF No. 145-1 at 5. New OP 135.4 goes on to include in the definition of safety-sensitive positions "all staff assigned to a correctional facility or probation and parole offices . . . ." Id. The definition of safety-sensitive positions ends with the line "[a]dditional positions may also be designated as 'safety-sensitive' on a case by case basis and with the prior written approval by Human Resources." Id. Finally, New OP 135.4 also defines non-safety-sensitive positions:

> Any position not classified as a Safety-Sensitive position. All employees at headquarters/administrative locations that are not issued firearms by [VDOC], do not directly supervise inmates, and do not have a CDL that is used of [sic] official [VDOC] business purposes. Non safety-sensitive positions would only be subject to drug testing for reasonable suspicion and post-accident.

Id. at 4.

\* \* \*

On August 17, 2023, Clarke and Stretcher filed a MOTION FOR LEAVE TO AMEND ANSWERS OF DEFENDANTS CLARKE AND STRETCHER (ECF No. 111). The motion proposed to include the defenses of "res

judicata and collateral estoppel (and/or any other applicable preclusion doctrine)." MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO AMEND ANSWERS OF DEFENDANTS DOTSON AND STRETCHER (ECF No. 112) at 1. The Court granted that motion on October 13, 2023. ECF No. 129. The defendants each filed an AMENDED ANSWER (ECF Nos. 130, 131) on October 17, 2023, and therein asserted new res judicata and/or collateral estoppel defenses. ECF No. 130 at 17 ¶ 10; ECF No. 131 at 16 ¶ 10. Thereafter, Dotson (then substituted for Clarke) and Stretcher filed the RULE 12(c) MOTION which asserts that the remaining claim in this case (Count II) is barred by res judicata, and collateral estoppel, based on the Final Circuit Court Opinion. MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT II OF PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P [sic] 12(C) [sic] (ECF No. 136). On March 6, 2024, the Court heard oral argument on that motion. During the hearing, counsel for Garrett represented that Garrett had moved on to a new job and had no desire to be reinstated to his old job at VDOC. Transcript of Proceedings held on March 6, 2024 ("Tr.") at 43:2-22 (ECF No. 148). Accordingly, the Court questioned whether there remained an actual case or controversy here and ordered further briefing on that issue. Id. at 62:19-63:7.

In the ensuing PLAINTIFF'S BRIEF ON SUBJECT MATTER JURISDICTION AND THE ISSUE OF WHETHER HIS CLAIMS REMAIN

JUSTICIABLE (ECF No. 145), Garrett argues that there is still a live case or controversy based on the Declaratory Judgment Act and his request for prospective injunctive relief. In the alternative, if the Court were to find that there was no remaining case or controversy, Garrett moves for leave to file a second amended complaint seeking an additional remedy: reinstatement to his former position at VDOC. PLAINTIFF'S MOTION TO AMEND COMPLAINT (ECF No. 146). ECF No. 146. In DEFENDANTS' RESPONSE MEMORANDUM ON SUBJECT MATTER JURISDICTION AND WHETHER THE MATTER IS STILL JUSTICIABLE (ECF No. 150), Dotson and Stretcher argue that the Court does, in fact, lack subject matter jurisdiction because this case is now moot.

DISCUSSION

## I. Mootness

### a. *Legal Standard*

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. Const. art. III, § 2, cl. 1. "The mootness doctrine is an important part of that limitation, preventing [courts] from advising on legal questions 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" Eden, LLC v. Justice, 36 F. 4th 166, 169 (4th Cir. 2022) (quoting Fleet Feet, Inc. v. NIKE, Inc., 986 F.3d 458, 463 (4th Cir. 2021)).

Accordingly, "[w]hen a case or controversy ceases to exist-- either due to a change in the facts or the law--'the litigation is moot, and the court's subject matter jurisdiction ceases to exist also.'" Porter v. Clarke, 852 F.3d 358, 363 (4th Cir. 2017) (quoting S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs, 789 F.3d 475, 482 (4th Cir. 2015)).

A case or controversy ceases to exist, and a case therefore becomes moot, when the requirements for Article III standing can no longer be met. See Arizonans for Off. Eng. v. Arizona, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'") (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980))). The requirements for standing are well-established. "To establish an injury sufficient to confer standing to bring suit under Article III, a plaintiff must show: (1) 'an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" Nelson v. Warner, 12 F.4th 376, 383 (4th Cir. 2021) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)).

Count II is a § 1983 claim alleging a violation of Garrett's Fourth Amendment rights. Pursuant to the Ex parte

12

Young doctrine, 209 U.S. 123 (1908), in a § 1983 suit against state officials in their official capacities, if an injury in fact exists that is fairly traceable to the defendant's conduct, it may be redressed by either a declaratory judgment or a prospective injunction.

### 1. Declaratory Relief

The Declaratory Judgment Act, 22 U.S.C. § 2201, provides, in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Our Court of Appeals has held that "a federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an 'actual controversy' between the parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment;' (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." Volvo Const. Equipment N. Am., Inc. v. CLM Equipment Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004) (quoting

N. Jefferson Square Assocs. v. Va. Hous. Dev. Auth., 94 F. Supp. 2d 709, 714 (E.D. Va. 2000)).

Addressing the first facet of that test, the Supreme Court of the United States has held that the phrase "case of actual controversy" in § 2201 is synonymous with the cases and controversies requirement of Article III. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126-27 (2007). Expounding on that principle, the Court held that the case-or-controversy requirement for declaratory relief requires that "the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" Id. at 127 (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937)).

Applying that reasoning, our Court of Appeals has held that where facts have changed to the extent that "[a]ll that remains . . . is [a] request for a declaration that [the plaintiff's] rights have been violated," there is no longer a case or controversy. Kirby v. City of Elizabeth City, N.C., 388 F.3d 440, 452 n.10. (4th Cir. 2004). "[A]bsent any expected practical effect of requested declaratory relief . . . a claim for such relief is not sufficient to create a case or controversy for

14

Article III purposes." Id. (emphasis added) (citing S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc., 24 F.3d 427, 431 (2d Cir. 1994)). Thus, even if the presiding court has an independent jurisdictional basis and does not abuse its discretion, a declaratory judgment is unavailable where that judgment would not have some real-world or tangible impact on the party seeking it.

### 2. Prospective Injunctive Relief

Count II also seeks prospective injunctive relief (plus attorneys' fees and costs), against Dotson and Stretcher in their official capacities, against enforcing the Policy as applied to Garrett. To have standing to seek prospective injunctive relief (i.e., for a prospective injunction request not to be moot), in an as-applied challenge such as this, a plaintiff must either suffer a continuing injury or be under a real and immediate threat of being injured in the future. See City of Los Angeles v. Lyons, 461 U.S. 95, 107 n.8 (1983); cf. Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 210-11 (holding that the fact of past injury, "while presumably affording [the plaintiff] standing to claim damages . . . , does nothing to establish a real and immediate threat that he would again" suffer similar injury in the future (quoting Lyons, 461 U.S. at 105)).

15

In Incumaa v. Ozmint, 507 F.3d 281 (4th Cir. 2007), the Fourth Circuit tackled whether a declaratory judgment and a related request for injunctive relief satisfied the live controversy requirement of Article III standing (i.e., was not moot) in a context similar to that presented here. There, Incumaa, an inmate who had been placed on his facility's Maximum-Security Unit ("MSU"), brought a § 1983 First Amendment action against the South Carolina Department of corrections ("SCDC"), seeking injunctive (and declaratory) relief from an SCDC policy ("Policy OP-22.11") as applied to him. Id. at 282. Policy OP-22.11 banned MSU inmates from receiving certain publications in the mail. Id. The district court granted summary judgment for SCDC, and the plaintiff appealed. But while the appeal was pending, Incumaa was released from the MSU into another, lower-security unit, the Special Management Unit ("SMU"). Id.

Therefore, the Court of Appeals found that the appeal was moot. First, the court held that the plaintiff's claim was moot because it was an as-applied rather than a facial challenge, and, "critically, the publications ban [therefore] no longer applie[d] to him. 'As applied' does not mean 'as it used to apply,' but rather 'as it continues to apply.'" Id. at 287. Then, the court turned to the plaintiff's own two arguments explaining why his case was not moot: (1) that the SCDC could

16

have reassigned him to the MSU at any time; and (2) that he was subject to a publications ban in the SMU that, if not identical in language, was identical in effect to the MSU ban. Id. at 285.

On the first argument, the Fourth Circuit agreed that "voluntary cessation of allegedly illegal activity does not . . . make the case moot." Id. at 288 (quoting United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953)). But, it still rejected the argument, holding that the "voluntary cessation" doctrine does not apply where "there is no reasonable expectation that the wrong will be repeated." Id. (citing W.T. Grant, 345 U.S. at 632). Such was the case in Incumaa because there was no indication in the record that SCDC removed the plaintiff from the MSU in order to moot the case, or that it removed him for any reason other than the "normal operation of the review procedures" already in place.[4] Rather, Incumaa had been moved from the MSU because of his own positive behavior performance. Id.

On the second argument, the Fourth Circuit rejected it by holding: "That Incumaa remain[ed] subject to a similar publications ban in the SMU [was] of no moment. Incumaa's complaint only challenge[d] MSU Policy OP-22.11, not SMU Policy

---

[4] The Court of Appeals also rejected a "capable of repetition, yet evading review" argument along similar reasoning. Id. at 288-89. That argument is not made in this case, so there is no need to consider it here.

17

OP-22.12 [the similar policy] . . . ." Id. at 277. The problem
was one of redressability:

> Given that the MSU and SMU policies are not
> one in the same and that there is no
> reasonable indication that Incumaa will ever
> feel the sting of the MSU policy again, it
> would be unconstitutional (as an advisory
> opinion), not to mention odd, for us to
> declare the MSU publications ban
> unconstitutional and enjoin its enforcement
> based on Incumaa's exposure to the SMU
> publications ban.

Id. at 288 (emphasis in original).

In sum, Incumaa held that, in an as-applied challenge
seeking to enjoin a rule or policy, a case is moot where that
policy no longer applies to the plaintiff. Furthermore, although
voluntary cessation of challenged policy does not necessarily
moot a case, a case challenging a voluntarily ceased policy is
still moot where there is no reasonable expectation that the
violation will occur again. Finally, where a policy has been
replaced (or effectively substituted by a change in the
plaintiff's own circumstances), a challenge to the old policy is
likewise moot even if the new policy is substantially similar to
the old one. In other words, a challenge to one policy does not
"transfer" to a different, albeit similar, policy.

18

### b. Analysis

#### 1. Declaratory Relief

In PLAINTIFF'S BRIEF ON SUBJECT MATTER JURISDICTION AND THE ISSUE OF WHETHER HIS CLAIMS REMAIN JUSTICIABLE (ECF No. 145), Garrett argues that, because Count II (the only remaining Count here) seeks declaratory relief against Dotson and Stretcher in their official capacities, there remains here an "actual case or controversy" in the context of the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Garrett is wrong and the claim for declaratory relief is moot because there is no longer an actual case or controversy present. This is so mainly because Count II is a challenge to OP 135.4 *as applied to Garrett*, and Garrett is no longer employed by VDOC and does not seek reinstatement as a remedy in the AMENDED COMPLAINT (ECF No. 27).

To begin, it is necessary to address an ambiguity respecting whether Count II is an as-applied challenge, a facial challenge, or both. The header of Count II in the AMENDED COMPLAINT reads: "COUNT II: DEPRIVATION OF CIVIL RIGHTS UNDER THE FOURTH AMENDMENT (A claim under 42 U.S.C. § 1983 against Defendants Clarke and Stretcher, in their official capacities, arising from [V]DOC's drug testing policy *as applied* to Plaintiff)." Am. Compl. at 21 (emphasis added). Paragraphs 122-127 under that header are similarly postured as an as-applied challenge. See id. at 22. However, in paragraph 128 under that

19

header, as well as line C. under the "Relief Requested" header
on pages 23-24, Garrett seeks to enjoin VDOC from enforcing the
(now-replaced) Policy prospectively and against *all* employees on
the basis of its unconstitutionality: i.e., a facial challenge.
Id. at 22, 23-24. Similarly, Garrett's memorandum argues that a
declaratory judgment "would . . . clarify and settle the
question of whether drug testing an employee in a non-safety-
sensitive position like Garrett is unconstitutional in
Virginia," and that a prospective injunction is necessary
because "it is by no means apparent that VDOC has discontinued
its unlawful drug testing policies as to Telecommunications
Network Coordinators, the position held by Garrett . . . ." ECF
No. 145 at 7, 8. These arguments smack of a facial challenge
because they allege that OP 135.4 violates the constitutional
rights of everyone to whom it applies, not just Garrett.
Although constitutional challenges conceivably can be both as-
applied and facial, a litigant bears the burden of providing a
clear set of facts and allegations from which the Court can
determine the nature of the claim. See Richmond Med. Ctr. for
Women v. Herring, 570 F.3d 165, 180 (4th Cir. 2009).

The Court raised this issue at the hearing on the RULE
12(c) MOTION. But counsel for the plaintiff emphasized that this
was, in fact, an as-applied, and not a facial, challenge:

> THE COURT: What about the fact that --
> what declaratory relief would I give when
> he's not there anymore and doesn't want to
> go back?
> MR. ALLEN: I think that the Court could
> issue a declaratory judgment that the
> policy, *as applied to him*, was
> unconstitutional.

Tr. at 41:25-42:5 (emphasis added).

> THE COURT: [If he wins] [h]e gets a
> declaration. That's a statement by the Court
> that this policy is . . . unconstitutional
> as applied to him. Only he's not there
> anymore so we're not applying the
> Constitution. So it's sort of just an
> advisory opinion that if he ever is to show
> up, watch out because you've got an opinion
> against you. It's sort of strange, it seems
> to me, the posture we're in.
> MR. ALLEN: Well, the injunctive relief,
> I don't know that it would be that limited.
> I think that the Court could find that this
> policy is unconstitutional and enjoin the
> department from continuing it. To my
> knowledge, they still have the same policy[5]
> and they continue to enforce it.
> THE COURT: But he's suing, then, on
> behalf of other people.
> MR. ALLEN: *Well, I don't see it that
> way. I think he's suing on behalf of
> himself.*
> THE COURT: Well --

Id. at 52:6-52:24 (emphasis added). Likewise, there was a

detailed exchange with defense counsel on this point:

---

[5] Counsel for Garrett advised in PLAINTIFF'S BRIEF ON
SUBJECT MATTER JURISDICTION AND THE ISSUE OF WHETHER HIS CLAIMS
REMAIN JUSTICIABLE (ECF No. 145) that he only found out about
the existence of New OP 135.4 while researching for that brief
and was unsure why VDOC had not disclosed the new policy sooner.
ECF No. 145 at 3 n.1.

> THE COURT: And then Count Three. Count
> Two is the deprivation of rights, and then
> Count Three is the deprivation of the rights
> by applying the drug policy. The same thing.
> Declaration is the same thing. But both of
> them are as applied to Garrett, aren't they?
>          MR. REGNERY: Absolutely, Your Honor. I
> believe that --
>          THE COURT: Well, wouldn't the remedy
> have to be also as applied to Garrett?
>          MR. REGNERY: Yes, Your Honor. *This is
> not a facial challenge*.

Id. at 60:19-61:4 (emphasis added). Counsel for the plaintiff did not take issue with the defendants' stated position. Accordingly, on the basis of the representations made in the AMENDED COMPLAINT and at the hearing, the Court construes Count II as an as-applied challenge to OP 135.4.

Because Count II challenges the Policy as applied to Garrett when it no longer, in fact, applies to him, "[a]ll that remains . . . is [a] request for a declaration that [Garrett's] rights have been violated." Kirby, 388 F.3d at 452 n.10; see also Incumaa, 507 F.3d at 287 ('As applied' does not mean 'as it used to apply,' but rather 'as it continues to apply.'"). Thus, in this case, a declaratory judgment would amount to an advisory opinion because it would have no practical effect on Garrett, who has moved on and has not sought reinstatement as a remedy in the complaint of record, nor even expressed a desire to return. It would be "an opinion advising what the law would be upon a hypothetical state of facts"; in other words, what the law would

22

be if Garrett were still employed by or sought to be employed by VDOC.[6] MedImmune, 549 U.S. at 127.

But, even if the request for declaratory relief was part of a facial challenge, it would still be moot under the rule in Incumaa, which applied to both injunctive and declaratory relief. See 507 F.3d at 283. Incumaa established that a challenge to one policy does not transfer to a new, different policy, even if it is similar in language and effect. See id. at 287-88. Here, VDOC's OP 135.4 has been updated and exists in its current form as New OP 135.4, which differentiates between safety-sensitive and non-safety-sensitive positions--the exact Fourth Amendment issue raised in the AMENDED COMPLAINT. OP 135.4 has therefore been replaced by New OP 135.4, meaning that for Garrett's claim not to be moot, he would have to amend his complaint again to challenge the new policy instead of the old one. See id. at 288.

---

[6] Although not necessary to decide the issue, it is worth pointing out that the other two Volvo Construction "essentials" for declaratory relief standing/lack of mootness are met here: the Court has an independent jurisdictional basis and would not abuse its discretion. 386 F.3d at 592.

The defendants argue that the Declaratory Judgment Act does not alone provide a jurisdictional basis, and that is true. ECF No. 150 at 7-8. But they are wrong that the Court lacks an independent jurisdictional basis here. 28 U.S.C. § 1331 grants this Court independent subject matter jurisdiction because Count II is a claim under 48 U.S.C. § 1983, a federal statute, and federal question jurisdiction satisfies the independent jurisdiction requirement for the Declaratory Judgment Act. Volvo Construction, 386 F.3d at 592.

## 2. Prospective Injunctive Relief

The analysis turns next to whether Garrett's request for prospective injunctive relief is moot. That claim is moot because it was brought as an as-applied challenge. As applied to Garrett, who does not seek reinstatement nor even wish to return to his old job, there is nothing respecting OP 135.4 for the Court to enjoin (even if that were VDOC's current policy, which it is not). Garrett is no longer employed by VDOC, and at least given the posture of this case, will not be employed by VDOC in the future. As was true for the plaintiff in Incumaa:

> Now that he has progressed out of [his old job], [Garrett] would no more benefit from declaring that [the Policy] was unconstitutional as it *applied* (past tense) to him and enjoining its enforcement than he would benefit from [the Court] declaring any other aspect of [VDOC] policy . . . unconstitutional and enjoining its enforcement. [Garrett] does not continue to have a personal stake in the outcome of this case, which means that this case is no longer the live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.

Incumaa, 507 F.3d at 287 (emphasis in original) (cleaned up). In other words, even if Garrett were to win here, a favorable judicial decision would not redress the wrong. Thus, the third standing requirement cannot be met and the request for injunctive relief is moot.

24

Therefore, Garrett's voluntary cessation argument--that VDOC's amendment of its policy does not moot the case--also fails. Although Garrett may be right that New OP 135.4 does, in fact, contain some ambiguous language about its applicability to safety-sensitive and non-safety-sensitive positions,[7] a favorable judicial decision would not redress the wrong either way because there is nothing to enjoin on Garrett's behalf. Therefore, it is immaterial whether the implementation of New OP 135.4 represents the type of voluntary cessation that would survive mootness because of a reasonable expectation that the violation could occur again to someone else.

The request for injunctive relief, too, would be moot even if it were brought under a facial challenge, for the same reason that the request for declaratory relief would be moot if brought under a facial challenge. New OP 135.4 has replaced OP 135.4, akin to the difference between the SMU policy and MSU policy in Incumaa, 507 F.3d at 288. Garrett's request for an injunction is therefore also moot for the separate reason that he has not challenged the new policy at all in his AMENDED COMPLAINT.

Accordingly, all of Count II is now moot. Because Garrett has moved on, does not seek reinstatement, and even, in fact, expresses no desire to return to employment with VDOC, a

---

[7] "Under the New OP 135.4, '[a]dditional positions may also be designated as 'safety-sensitive' on a case by case basis . . . .'" ECF No. 145 at 7.

25

declaratory judgment would be an advisory opinion, and there is nothing further for the Court to enjoin. Absent leave to amend his complaint a second time, the controversy alleged in Count II has "cease[d] to exist . . . due to a change in the facts . . . [and, therefore,] the litigation is moot, and the court's subject matter jurisdiction [has] cease[d] to exist also." Porter, 852 F.3d at 363.

## II. Leave to Amend the Complaint

Garrett seeks leave to amend his complaint a second time to include the request to be reinstated to his old job at VDOC. ECF No. 146. This prospective injunctive relief would be the remedy awarded pursuant to a successful as-applied Fourth Amendment challenge to VDOC's drug testing policy. The defendants oppose the proposed amendment, arguing that amendment would be futile. ECF No. 149 at 3.

Whether this amendment would be futile rests entirely upon the claim and issue preclusion arguments raised in the RULE 12(c) MOTION, in the accompanying memoranda, and at the March 6, 2024 hearing on that motion. Dotson and Stretcher argue that Count II is totally barred by the Final Circuit Court Opinion, under claim and issue preclusion, because: (1) the Fourth Amendment issue was litigated before, and decided by, the Richmond Circuit Court (issue preclusion); and (2) Garrett's § 1983 claim here arises from the same conduct, transaction, and

26

occurrence that form the basis of his dismissed state grievance claim against VDOC, an entity with whom Clarke and Stretcher are in privity (claim preclusion). ECF No. 136 at 5-11. In response, Garrett argues that this case is not barred by claim preclusion because of Passaro v. Virginia, 935 F.3d 243 (4th Cir. 2019), which held that, "if procedural rules prevented the plaintiff from asserting all his claims for relief in a single case, then claim preclusion does not bar the plaintiff from bringing a second case to seek the relief he could not obtain in the first." Id. at 249; ECF No. 139 at 4-14. He also argues that issue preclusion does not apply because he never got to raise the merits of his Fourth Amendment argument in either state court or the administrative hearing, and therefore, that issue was not actually litigated. Accordingly, says Garrett, the putative claim tendered in the proposed amended complaint is not barred by collateral estoppel. ECF No. 139 at 15-16.

For the reasons set forth below, PLAINTIFF'S MOTION TO AMEND COMPLAINT (ECF No. 146) will be denied because amendment would be futile. Although Garrett's Fourth Amendment *claim* is not barred by res judicata under Passaro v. Virginia, 935 F.3d 243 (4th Cir. 2019), the *issue* of whether Garrett's Fourth Amendment right to be free from an unreasonable search (his potential drug testing under OP 135.4) was actually litigated before the Circuit Court and the determination of that issue was

27

essential to its final judgment. Thus, that issue--the sole issue on Count II--is barred in this case under the doctrine of collateral estoppel.[8]

### a. *Legal Standard*

#### 1. Leave to Amend

Courts should freely give leave to amend when justice so requires. Fed. R. Civ. Pro. 15(a)(2); United States ex. rel. May v. Purdue Pharma L.P., 737 F.3d 908, 920 (4th Cir. 2013). But a district court should deny leave to amend when "(1) 'the amendment would be prejudicial to the opposing party;' (2) 'there has been bad faith on the part of the moving party;' or (3) 'the *amendment would have been futile.*'" Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014) (emphasis added) (quoting Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 121 (4th Cir. 2013)).

#### 2. Virginia Employee Grievance Procedures

To understand the merits of the parties' claim and issue preclusion arguments, it is necessary to conduct a survey of the Virginia employee grievance procedures.

Code of Virginia Section 2.2-3000 *et seq.* govern the state administrative procedures for discipline of a state employee.

---

[8] Additionally, Garrett would need to amend his complaint to challenge VDOC's drug policy in its current form, New OP 135.4, rather than the old policy. Garrett has not moved for leave to make that amendment, but even if he had, it would be denied as futile too, for the same reasons.

All employees of the Commonwealth are covered by these procedures, unless exempted by law. Va. Code § 2.2-3001. Normally, the statute sets forth several mandatory, preliminary steps of grievance resolution, culminating in a hearing. Id. § 2.2-3003(A). In the event of a dismissal from employment stemming from "formal discipline,"[9] though, the grievance shall proceed directly to a formal hearing. Id.; id. § 2.2-3004(A).

A Hearing Officer conducts the grievance hearing. The Hearing Officer is assigned by the Virginia Department of Human Resource Management ("DHRM"), on a rotating basis, from a pre-designated list of administrative Hearing Officers or classified attorneys. Id. § 2.2-3005(B). Hearing Officers have the authority to hold pre-hearing conferences, dispose of procedural requests, issue orders requiring testimony or other evidence, administer oaths and affirmations, and admit or exclude evidence (under the rules of evidence and other DHRM procedural rules), much as would a trial judge. Id. § 2.2-3005(C). Hearing Officers are authorized by statute to award reinstatement, back pay, reinstatement of benefits and back benefits, mitigation or reduction of disciplinary action, and reasonable attorney fees (subject to DHRM rules). Id. § 2.2-3005.1.

---

[9] Garrett was dismissed because of formal disciplinary action. VDOC issued him a Group III written notice of disciplinary action for failing to submit to the testing, which was the basis for his firing. First Grievance Decision, ECF No. 27-5, at 1. Accordingly, his case went straight to a hearing.

The hearing procedures are governed by the Grievance Manual. Section Five of which covers the hearing itself, and the Hearing Officer's power and authority within and as a result of that hearing. Section 5.9 provides that "[h]earing officers may order appropriate remedies but *may not grant relief that is inconsistent with law, policy, or the grievance procedure*" (emphasis added). Section 5.9(a) provides a non-exhaustive list of examples of possible relief, which include back pay, attorney's fees, and an order that the agency comply with applicable law and policy. Section 5.9(b) specifies the forms of relief that are not available, of which the relevant ones are: damages; "[e]stablishing or revising policies, procedures, rules, or regulations"; "[d]irecting the methods, means or personnel by which work activities are to be carried out"; and any other relief that is inconsistent with state statute, the Grievance Manual, or other rules.

A grievant can appeal an unfavorable Hearing Officer's decision. "The state employee grievance procedure creates a 'tripartite review procedure' setting forth the following roles: (1) the Hearing Officer is the finder of fact and final authority on factfinding; (2) DHRM and EDR determine whether the Hearing Officer's ruling is in compliance with personnel policy and grievance procedure respectively; and (3) the courts determine whether the grievance determination is 'contradictory

30

to law.'" <u>Court of Appeals Decision</u>, 2022 WL 677897, at *2 (quoting <u>Passaro State Court Decision</u>, 67 Va. App. at 367). Once a decision is appealed, the DHRM Director shall determine within thirty days of the conclusion of any other administrative reviews whether the decision was "consistent with policy." <u>Id.</u> § 2.2-3006(A). But more importantly here, the grievant appeals the decision on *legal* grounds to the Circuit Court of the jurisdiction in which the grievance arose. <u>Id.</u> § 2.2-3006(B); <u>Passaro State Court Decision</u>, 67 Va. App. at 361 (recognizing that a Circuit Court sits as an appellate court in grievance appeals). First, the Director must approve of the appeal. Then, the employer must send a copy of the grievance record to the clerk of the court. Va. Code § 2.2-3006(B). "Within 30 days of receipt of the grievance record, the court, *sitting without a jury*, shall hear the appeal on the record." <u>Id.</u> (emphasis added). The Circuit Court may affirm the Hearing Officer's decision or reverse or modify it. The decision shall be issued within fifteen days of the conclusion of the appeal hearing. <u>Id.</u> "A termination shall be upheld unless shown to have been unwarranted by the facts or contrary to law or policy." <u>Id.</u> § 2.2-3007(C).

Finally, because the Circuit Court sits as an appellate court in grievance appeals, it is limited to the record as presented from the grievance hearing. Therefore, new findings of

31

fact may not be made or litigated on appeal. See Osburn v. Va. Dep't of Alcoholic Beverage Control, 295 Va. 10, 17 (2018) ("On appeal from a state employee grievance decision, courts are bound by the factual findings of the Hearing Officer and may only reverse or modify the decision if it is 'contradictory to law.'"). This principle is settled in Virginia law. "On appeal, it is well-established that 'the burden is on the appellant to present to [the appellate court] a sufficient record from which [the appellate court] can determine whether the lower court has erred in the respect complained of.'" Court of Appeals Decision, 2022 WL 677897, at *3 (quoting Justis v. Young, 202 Va. 631, 632 (1961)); see also Woods v. R.D. Hunt & Son, Inc., 207 Va. 281, 287 (1966) ("[T]he Onus [sic] is upon the appellant to provide us with a sufficient record from which we can decide whether the trial court erred as alleged."); McDonald v. Nat'l Enters., Inc., 262 Va. 184, 195 (2001) ("As the appellant in this appeal, McDonald has the burden to present a sufficient record on which this Court can determine whether the circuit court erred as McDonald contends."); Bunton v. Commonwealth, 6 Va. App. 557, 561 (1988) ("Bunton has the responsibility of providing the record on appeal necessary to enable the reviewing court to address the issues. As he has failed in that responsibility, we cannot consider the merits of his appeal.").

### 3. Virginia Res Judicata[10]

With that background in mind, the analysis turns back to the law of claim preclusion and issue preclusion. It is well-settled that "[t]he full faith and credit clause of the U.S. Constitution directs federal courts to look to the laws of the state in which a prior judgment was rendered to determine the preclusive effect of that judgment in a subsequent federal suit." Camara v. Gold Coast IT Sols., LLC, No. 1:17-cv-70, 2017 WL 6030464, at *2 (E.D. Va. Dec. 5, 2017) (citing Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985)). And, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to "give the same preclusive effect to a state-court judgment as another court of that State would give." Parsons Steel, Inc. v. First. Al. Bank, 474 U.S. 518, 523

---

[10] Often and shorthandedly in the legal world, the term "res judicata" is said to refer to claim preclusion, and the term "collateral estoppel" is said to refer to issue preclusion. See, e.g., U.S. Dep't of Lab., Doctrines of Preclusion at 6, https://www.dol.gov/sites/dolgov/files/brb/References/Reference_works/lhca/lsdesk/DBRES.pdf (last accessed July 23, 2024) ("The doctrine of res judicata is one of claim preclusion whereas collateral estoppel is one of issue preclusion."). Although mostly getting the gist, this paradigm is not exactly accurate, at least in Virginia, as set forth infra. This opinion therefore uses the more modern, and more accurate, language of claim versus issue preclusion, both concepts being contained in the centuries-old doctrine of res judicata. See Arthur Wilson, The History of Great Britain, Being the Life and Reign of King James the First, Relating to What Passed from His First Access to the Crown, Till His Death at 89 (1653), in University of Michigan Library Digital Collections, Early English Books Online, https://name.umdl.umich.edu/A66541.0001.001 (last accessed July 23, 2024).

(1986). Because this matter was adjudicated in Virginia and under the laws of the Commonwealth, Virginia preclusion law applies, and this Court must enforce that law as would a court of Virginia.

### A. Background and History: Preclusion[11]

Over time, the law of claim and issue preclusion has greatly evolved in Virginia. "The exact origins of res judicata cannot be found in any 'statute or rule of the common law,'" Funny Guy, LLC v. Lecego, LLC, 293 Va. 135, 141 (2017) (quoting Martin P. Burks, Common Law and Statutory Pleading and Practice § 357, at 672 (T. Munford Boyd ed., 4th ed. 1952)). But originally, in Virginia, "[r]es judicata [was considered to] encompass[] four preclusive effects, each conceptually distinct, which a final personal judgment may have upon subsequent litigation. [Those were] merger, direct estoppel, bar, and collateral estoppel." Bates v. Devers, 214 Va. 667, 670 (1974). Those preclusive effects could, in turn, be divided into two categories: claim preclusion and issue preclusion. Lee v. Spoden, 290 Va. 235, 245 (2015). Merger and bar have essentially become claim preclusion, whereas "[t]he preclusive effects of

---

[11] This section, and indeed, much of this opinion, relies heavily on the excellent legal scholarship of Justice Kelsey set forth by the Supreme Court of Virginia in the 2017 decision of Funny Guy, LLC v. Lecego, LLC, 293 Va. 135, 795 S.E.2d 887 (2017).

direct estoppel and collateral estoppel fall under the category of issue preclusion." Id. at 246.

Today, in Virginia, "[r]es judicata involves both issue and claim preclusion." Funny Guy, 293 Va. at 142 (citing Lee, 290 Va. at 245-46). Claim preclusion, on the one hand,

> bars the assertion of legal or equitable rights of action, *even if they were not specifically resolved in earlier litigation* . . . . Called "merger" when the claimant wins the first suit and "bar" when the claimant loses it, claim preclusion under the doctrine of res judicata treats unasserted claims as being subsumed in the disposition of the related, previously adjudicated, claims.

Id. at 142-43 (emphasis in original) (quoting Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 14.11[B][5], at 1,214 (6th ed. 2014)). Issue preclusion, on the other hand, "bars relitigation of common factual issues between the same or related parties." Id. at 142. More specifically, issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Lee, 290 Va. at 246. "The requirement that an issue must have been the subject of actual rather than potential litigation is one of the features distinguishing [issue preclusion] from [claim preclusion]." Snead v. Bendigo, 240 Va. 399, 401 (1990).

35

The preferred means of determining whether claim preclusion barred later proceedings have changed over the years. One such method was the so-called "same evidence test," which barred a plaintiff from maintaining a second action upon one transaction if the evidence needed to sustain the second action would have sustained the first action. See Restatement of Judgments § 61, at 240 (Am. L. Inst. 1942). The first Restatement "applied this test to determine what constituted a single transaction for purposes of res judicata. However, '[a]lthough the "same evidence" standard was "[one] of the tests" used at the time, it was not the only one.'" Funny Guy, 293 Va. at 145 (quoting Nevada v. United States, 463 U.S. 110, 130 n.12 (1983)). Another method was the so-called "same subject matter test," where if the two suits "involve[d] the same subject-matter, and [had] a common object," the second suit was barred. Martin v. Columbian Paper Co., 101 Va. 699, 701 (1903).

Courts and scholars have preferred the same subject matter test because the same evidence test was flawed in that it only worked one way, as a test for inclusion rather than a test for exclusion. Funny Guy, 293 Va. at 145 (citing Robert C. Casad & Kevin M. Clermont, Res Judicata: A Handbook on its Theory, Doctrine, and Practice 66 (2001)). Indeed, "[e]arly Virginia cases applying the merger-bar principles of res judicata focused on the subject matter of the underlying dispute . . . ," rather

36

than whether the same evidence would have sustained a prior action. Id. at 148. Nevertheless, in 2003, the Supreme Court of Virginia "adopted a strict view of the same-evidence test that was wholly out of sync with the prior, far broader, same-subject-matter test." Id. That case, Davis v. Marshall Homes, 265 Va. 159 (2003), "redefined the doctrine of res judicata," making it "'a source of confusion' among experienced litigators and trial judges," by mandating that Virginia courts use the same evidence test. Funny Guy, 293 Va. at 149 (quoting John R. Walk, Annual Survey of Virginia Law: Civil Practice and Procedure, 39 U. Rich. L. Rev. 87, 91 (2004); Sinclair & Middleditch, supra, § 14.11[B][5], at 1216).

So, in 2004, the Boyd-Graves Conference[12] recommended that the General Assembly enact a statute to overturn Davis and return res judicata in Virginia to the "same subject matter" test. Id. at 150. To accomplish that goal, the Conference recommended that the General Assembly adopt language encompassing the similar "same transaction or occurrence" language in existing pleading and joinder statutes and the second Restatement of Judgments. Id. The General Assembly

---

[12] An annual meeting of Virginia professors, judges, and civil lawyers "with different types of practices, from all regions of the state, [who] meet and attempt to reach consensus about ways to improve the law" with the goal of the "advancement of Virginia's civil procedure." Boyd-Graves Conference: About the Conference, Virginia Bar Association (2024), https://www.vba.org/page/boyd_graves.

agreed, and the Rules Advisory Committee of the Judicial Council set forth Virginia Supreme Court Rule 1:6, which contained "transactional" test language. Id.

Therefore, today, Va. Sup. Ct. R. Rule 1:6 totally establishes the standard for the claim preclusion portion of res judicata, using the "same transaction or occurrence" language. It states, in relevant part:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.

### B. Claim Preclusion

"In Virginia, claim preclusion is governed by Rule 1:6." Lee, 290 Va. at 245. To determine whether a subsequent claim is precluded by an earlier one, the Supreme Court of Virginia has subdivided this rule into three analyses: (1) whether the prior claim was decided on the merits by a final judgment; (2) whether the claims are between the same parties; and (3) whether both claims arise from the same conduct, transaction, or occurrence. Id. at 247–49.

### i. "Decided on the Merits by a Final Judgment"

"A final judgment is essential to the imposition of res judicata to bar a claim." Kellogg v. Green, 295 Va. 39, 45 (2018). "A decree is final only when it disposes of the whole subject, gives all the relief that is contemplated and leaves nothing to be done by the court in the cause except its ministerial execution. Where further action of the court in the cause is necessary to give completely the relief contemplated by the court, the decree is not final but interlocutory." Brooks v. Roanoke Cty. Sanitation Auth., 201 Va. 934, 936 (1960) (internal citations omitted). Whether a final judgment is on the merits, however, is a separate analysis. See Kellogg, 295 Va. at 45 (cabining, expressly, the finality analysis from the merits analysis in that case).

"A judgment is on the merits when it amounts to a decision as to the respective rights and liabilities of the parties, based on the ultimate . . . facts . . . on which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions." Storm v. Nationwide Mut. Ins. Co., 199 Va. 130, 134 (1957) (quoting 50 C.J.S. Judgments § 627 (1955)).

In Alexander v. Cobb, 298 Va. 380, 389 (2020), the Supreme Court of Virginia more recently applied this reasoning to a

final decree dismissing a quiet title action and held that it was a final judgment on the merits. There, the defendant, in a responsive pleading, moved for declaratory relief, asking the Circuit Court to quiet title to certain properties in her. Id. at 385-86. But in a bench trial, the trial court gave claim preclusive effect to its final decree from an earlier action in which it found that her brother had a 25% interest in the property. Id. at 386. On appeal, the Supreme Court of Virginia held that this was correct because the final decree had "decided the respective rights of [the defendant and her brother]." Id. at 389. The final decree had done so because the trial court had decided those rights in the factual findings in an earlier, different proceeding, as presented in the record, and rendered a "dismissal [which] was based on the factual and legal determination [in that earlier proceeding] that [the defendant] failed to prove that she had a 100% ownership in the Properties." Id. In other words, the earlier decision was given claim-preclusive effect based on the plaintiff's failure to carry her evidentiary burden there.

The Court of Appeals of Virginia similarly has held that claims not raised and not actually litigated can still be decided on the merits by a final judgment. In Starbucks Coffee Co. v. Shy, 61 Va. App. 229 (2012), Starbucks, the appellant, argued that a Worker's Compensation Commission award order to a

40

former employee was not a final judgment because the employee's return to work was never litigated on the merits before the Commission. Id. at 240-41. The court held that, in the *claim preclusion* analysis there (not issue preclusion), Starbucks's "presuppos[ition] that res judicata applies only to issues actually litigated before a court or commission" was wrong. Id. at 241. This was because "[c]laims precluded by res judicata include those 'made or tendered by the pleadings,' as well as those 'incident to or essentially connected with the subject matter of the litigation, whether the same, as a matter of fact, were or were not considered.'" Id. at 241-42 (quoting Lofton Ridge, LLC v. Norfolk S. Ry., 268 Va. 377, 381 (2004)). In other words, "the 'effect of a final decree is not only to conclude the parties as to every question actually raised and decided, but *as to every claim which properly belonged to the subject of litigation and which the parties, by the exercise of reasonable diligence, might have raised at the time*.'" Id. at 241 (emphasis added) (quoting Smith v. Holland, 124 Va. 663, 666 (1919)). Accordingly, unlike for issue preclusion, claim preclusion does not require that the litigant actually raise the claim in the prior proceeding.

The Supreme Court of the United States has also set forth what a "judgment on the merits" entails, in Virginia or elsewhere. In Semtek Int'l Inc. v. Lockheed Martin Corp., 531

U.S. 497 (2001), the Supreme Court held that, for purposes of claim preclusion, a final judgment "on the merits" is one "that actually 'passes directly on the substance of a particular claim' before the court." Id. at 501-02 (quoting Restatement (Second) of Judgments § 19, cmt. a (Am. L. Inst. 1981)); see also On the Merits, Black's Law Dictionary (11th ed. 2019) ("(Of a judgment) delivered after the court has heard and evaluated the evidence and the parties' substantive arguments."); Judgment on the Merits, Black's Law Dictionary (11th ed. 2019) ("A judgment based on the evidence *rather than on technical or procedural grounds* . . . .") (emphasis added).

### ii. "Against the Same Opposing Party or Parties"

For a subsequent claim to be res judicata, it must be between the same parties as in the original claim. "The term 'party or parties' as used in Rule 1:6(a) 'include[s] all named parties and those in privity.'" Lee, 290 Va. at 248 (quoting Va. Sup. Ct. R. 1:6(d)).

Individuals sued in their official capacities are in privity with the agency or department of which they are officials. "The touchstone of privity for purposes of res judicata is that a party's interest is so identical with another that representation by one party is representation of the other's legal right." State Water Control Bd. v. Smithfield

Foods, Inc., 261 Va. 209, 214 (2001). In Brooks v. Arthur, 626 F.3d 194 (4th Cir. 2010), the Fourth Circuit squarely addressed whether employees of VDOC are in privity with VDOC, the entity. There, three fired VDOC corrections officers sued VDOC officials for retaliation, under § 1983, in the officials' individual capacities. Id. at 195-96. The district court, applying Virginia law, had held that res judicata barred the officers' claims because the defendant officials in their individual capacities were in privity with VDOC. Id. at 196 (citing Brooks v. Arthur, 611 F. Supp. 2d 592 (W.D. Va. 2009)). But the Fourth Circuit reversed. It held that, under the doctrine of differing capacities, VDOC officials in their individual capacities and VDOC officials in their official capacities were fully distinct for res judicata purposes. Id. at 201-02. And, "because 'the real party in interest in an official-capacity suit is the entity . . . in contrast to [an] [individual]-capacity suit, in which a plaintiff can seek a judgment against the official's personal assets,'" the VDOC officials, in their individual capacities, were not in privity with VDOC. Id. at 202-03 (quoting Andrews v. Daw, 201 F.3d 521, 525 (4th Cir. 2000)). That, of course, by rather clear logical process, means that the officials in their official capacities *were* in privity with VDOC, and that in that context, res judicata would bar the claim. See id.

43

### iii. "Arise from that Same Conduct, Transaction, or Occurrence"

When determining whether a subsequent action involves the same conduct, transaction, or occurrence, the focus is on whether the subsequent action is based on the same cause of action as in the first suit. Lee, 290 Va. at 248. Not to be confused with a right of action, a cause of action is a "set of operative facts which, under the substantive law, may give rise to a right of action." Id. at 248-49; Roller v. Basic Constr. Co., 238 Va. 321, 327 (1989). "'[M]ultiple rights of action may arise under a given cause of action.' However, 'a wrongful act generally gives rise to only a single indivisible cause of action.'" Lee, 290 Va. at 249 (quoting Kiser v. A.W. Chesterton Co., 285 Va. 12, 21 (2013)).

"The proper approach asks 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" Funny Guy, 293 Va. at 154 (quoting Restatement (Second) of Judgments § 24(2) (Am. L. Inst. 1982)). These factors should be considered pragmatically and in totality. Id. at 154-55. And, "[u]nder this approach, it does not matter that the claimant 'is prepared in the second action (1) [t]o present evidence or grounds or theories of the case not presented in the

44

first action, or (2) [t]o seek remedies or forms of relief not demanded in the first action.'" Id. at 155 (alterations in original) (quoting Restatement (Second) of Judgments § 25 (Am. L. Inst. 1982)).

### C. Issue Preclusion

The next facet of the analysis examines Virginia's law of issue preclusion. It embodies both direct and collateral estoppel.

Issue preclusion is generated as direct estoppel when it arises from successive prosecutions of the same claim following some kind of agreed or coerced "splitting." Davenport v. N.C. Dep't of Transp., 3 F.3d 89, 93 (4th Cir. 1993) (citing Restatement (Second) of Judgments § 27 cmt. b (Am. Law Inst. 1982)). But direct estoppel is a "rare brand" of issue preclusion. Id. at 94.

More commonly, "[u]nder the concept of collateral estoppel, 'the parties to [a] first action and their privies are precluded from litigating [in a subsequent suit] any issue of fact actually litigated and essential to a valid and final personal judgment in the first action.'" Rawlings v. Lopez, 267 Va. 4, 4-5 (2004) (quoting Norfolk & W. Ry. v. Bailey Lumber Co., 221 Va. 638, 640 (1980)); see also D'Ambrosio v. Wolf, 295 Va. 48, 56 (2018) (applying the rule articulated in Rawlings more recently). As with claim preclusion, the burden is on the party

seeking to assert issue preclusion to establish that the issue is in fact precluded by an earlier judgment. Lane v. Bayview Loan Servicing, LLC, 297 Va. 645, 654 (2019). In order to successfully assert collateral estoppel, a party must establish that:

> (1) the parties [or their privies] to the two proceedings [are] the same, (2) the issue of fact sought to be litigated [was] actually litigated in the prior proceeding, (3) the issue of fact [was] essential to the prior judgment, and (4) the prior proceeding . . . resulted in a valid, final judgment against the party against whom the doctrine is sought to be applied.

Id. (citing Glasco v. Ballard, 249 Va. 61, 64 (1995)).

Most at issue in this case is whether an issue was "actually litigated." (Sameness of parties and the validity and finality of a judgment are discussed in the claim preclusion discussion, supra.) An issue is "actually litigated" and, therefore, is given preclusive effect, if a "court [has] an opportunity to pass judgment on the sufficiency of the factual allegations at issue in the case." Hately v. Watts, 917 F.3d 770, 780 (4th Cir. 2019) (emphasis added). "An issue lurking in the record but not raised or decided is not actually litigated." Fofana v. Mayorkas, 4 F.4th 668, 671 (8th Cir. 2021) (emphasis added) (citing Cromwell v. County of Sac, 94 U.S. 351, 353 (1876); Restatement (Second) of Judgments § 27 cmt. e (Am. L. Inst. 1982)). Thus, where an issue is raised before a court, and

46

that court rules on that issue without merely disposing of it on procedural grounds, it is actually litigated. By contrast, for example, in Lane, the issue was not actually litigated because the trial court simply refused to grant the injunction at issue because one of the other necessary parties was not named as a party. 297 Va. at 658.

### 4. Federal Court Enforcement of State Res Judicata in Federal Claims

As previously noted, in deciding whether to give claim or issue preclusive effect to a state court's decision, federal courts are bound by that state's res judicata law. However, in applying state law, federal courts must also comply with federal law respecting procedural differences that arise between the state and federal claims. The decision in Passaro v. Virginia, 935 F.3d 243 (4th Cir. 2019), illustrates this principle.

In Passaro, our Court of Appeals held that, "if procedural rules prevented the plaintiff from asserting all his claims for relief in a single case, then claim preclusion does not bar the plaintiff from bringing a second case to seek the relief he could not obtain in the first." Id. at 249. There, Passaro, a former Special Agent with the Virginia State Police, was disciplined and demoted following repeated disciplinary notices. Id. at 246. Passaro filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). He asserted that, in

disciplining him, the department had failed to accommodate his job-related post-traumatic stress disorder and also had harassed and discriminated against him based on his disability and national origin. Then, Passaro was fired for alleged misconduct. Subsequent to his firing, Passaro had a grievance hearing pursuant to Virginia Code § 2.2-3003. The Hearing Officer overturned some of the disciplinary action against him, but upheld Passaro's dismissal. The Circuit Court, after some procedural back and forth, affirmed the Hearing Officer's decision, and the Court of Appeals of Virginia affirmed the Circuit Court. Id.; Passaro State Court Decision, 67 Va. App. at 362.

Passaro sued the Commonwealth in federal court. Passaro v. Virginia, No. 2:17-cv-48, 2018 WL 3097321, at *3 (E.D. Va. June 21, 2018) [hereinafter "Passaro District Court Decision"]. He alleged retaliation and national origin discrimination claims under Title VII of the Civil Rights Act. Id. The defendants moved for summary judgment, arguing that the Passaro State Court Decision, 67 Va. App. 357 (2017), barred Passaro's claims in the district court under the doctrine of claim preclusion. Passaro District Court Decision, 2018 WL 3097321, at *1. In response, Passaro argued that claim preclusion did not apply because the Hearing Officer could not have heard the claims present in his federal action. Id. at *5. The district court rejected this

48

argument, holding that the Hearing Officer had "robust" authority to review all the claims asserted in court, and could grant "expansive" remedies for those claims if successful. Id. at *6. Citing Martin-Bangura v. Va. Dep't of Mental Health, 640 F. Supp. 2d 729, 73, 739-41 (E.D. Va. July 31, 2009), the district court held further that in Passaro's case, as in Martin-Bangura, the Hearing Officer could have heard both Passaro's wrongful termination and discriminatory discipline claims together. Passaro District Court Decision, 2018 WL 3097321, at *6. Therefore, his Title VII claims were barred by claim preclusion. Id.[13]

The Fourth Circuit reversed the district court's holding that the Title VII claims were barred by claim preclusion. Passaro, 935 F.3d at 249. The Court of Appeals acknowledged that Va. Sup. Ct. R. 1:6 employed the "same transaction" approach to claim preclusion, and that Passaro's Title VII claims did arise from the same transaction as his firing (which he litigated through the state grievance process). But it observed that, "[e]ven under Rule 1:6, claim preclusion remains 'the stepchild of pleading and joinder rules' and 'largely depends on which claims could have been brought' in the earlier action." Id. at

---

[13] The district court upheld the dismissal of Passaro's ADA claim, however, on 11th Amendment sovereign immunity grounds. 935 F.3d at 247-249. But that portion of the ruling had no overlap with the claim preclusion analysis discussed here.

250 (emphasis in original) (quoting Funny Guy, 295 Va. at 143). The Court of Appeals reasoned further that "the transactional approach assumes 'no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or *demands for relief* that might have been available to him under applicable law.'" Id. (emphasis in original) (quoting Restatement (Second) of Judgments § 26(1)(c) cmt. c (Am. Law Inst. 1982)). Thus, if certain "theories of recovery or demands for relief" were unavailable in one proceeding, claim preclusion under Rule 1:6 does not bar that claim in a subsequent proceeding.

The Court of Appeals held that Passaro could not have secured all the relief that he sought in the first action (the state grievance proceeding). Virginia's grievance procedures allow for the bringing of substantive claims that cannot be pursued in a typical civil action and, indeed, provide the only means to have a disciplinary action overturned for a violation of agency policies. Id. And, unlike in a Title VII claim, damages are *not* available either at the grievance hearing or later, on appeal to the Circuit Court or appellate courts of Virginia. Id. at 251. This difference in remedies, the court held, would mean that forcing Passaro to bring all his claims for relief in one action meant either foregoing damages (if brought in the grievance hearing) or foregoing the appeal

process for his firing (if brought in a civil action). Id. at 252. Furthermore, the unavailability of a jury in either the grievance hearing or on appeal meant that Passaro would have to forego the right to a jury, too, if he were forced to litigate the Title VII claims at the grievance hearing, another procedural rule difference auguring against claim preclusion. Id. In so holding, the Court of Appeals also rejected the Commonwealth's argument that, because Rule 1:6 provides that claim preclusion applies "regardless of . . . the particular remedies sought" in the prior proceeding, that applied to Passaro's Title VII claim. The difference, the court said, was between the remedies *sought* and the remedies *available*: although a litigant cannot voluntarily seek only a portion of the available remedies, that is not the same as having the remedy forced by procedural rules. Id. at 251-52. The court noted, however, that "claim preclusion could still conceivably bar Passaro's Title VII action to the extent that he seeks remedies (such as reinstatement and back pay) that were available through the grievance process."[14] Id. at 252.

---

[14] Also, the Court of Appeals confined its holding to claim preclusion and did not address issue preclusion. On that point, it explicitly held that its holding "d[id] not necessarily mean giving litigants like Passaro a second bite at the apple. If Passaro raised issues about discrimination and retaliation during the grievance process, and those issues were actually decided, then issue preclusion may bar relitigating them." 935 F.3d at 252.

Another decision, by the United States Court of Appeals for the Second Circuit and cited in Passaro, applied the same logic and with the same result in a § 1983 claim. In Davidson v. Capuano, 792 F.2d 275 (2d Cir. 1986), a state prisoner had successfully challenged discipline he received in prison through a state court proceeding brought under New York's Civil Practice Law and Rules. Id. at 277. The state then raised claim preclusion as a defense in a subsequent § 1983 claim arising from the same facts. The Second Circuit found that damages were available in the § 1983 action but not the New York state rules. Therefore, the Second Circuit, finding that "the initial forum did not have the power to award the full measure of relief sought in the later litigation," held that claim preclusion did not bar the § 1983 action. Id. at 278.

The Fourth Circuit earlier had reached a similar result in a § 1983 res judicata analysis in Davenport v. N.C. Dep't of Transp., 3 F.3d 89 (4th Cir. 1993). There, a panel of the Court of Appeals applied North Carolina law to determine whether a § 1983 claim was barred by claim preclusion arising from judicial review of an agency decision in that state. In Davenport, a former North Carolina Department of Transportation ("DOT") employee prevailed in a state administrative hearing where he alleged that his firing was not for "just cause," a requirement of the North Carolina State Personnel Act, thereby violating

that statute. Id. at 91-92. On appeal, the North Carolina courts upheld the administrative law judge's decision in Davenport's favor. Id. at 92 (citing N.C. Dep't of Transp. v. Davenport, 102 N.C. App. 476 (1991)). Davenport was reinstated with backpay. Id. But, when new information came to light of a partisan patronage hiring system within DOT, Davenport brought a § 1983 claim, alleging violations of his First Amendment right to freedom of association, against five DOT employees in their individual and official capacities, seeking (in part) damages. Id. The district court granted summary judgment to the defendants on the basis that res judicata barred the § 1983 claim because of the state court decision upholding that of the ALJ. Id.

The Fourth Circuit, as in Passaro, reversed, holding that North Carolina courts would not give the judgment upholding the administrative award claim-preclusive effect. Id. at 93. In explaining its reasoning, the Court of Appeals noted several North Carolina Supreme Court opinions which treated a judicially reviewed administrative decision and a § 1983 claim as "separate." Id. at 94. More broadly, the Court of Appeals (presciently, with respect to Passaro) advocated for a "cautious and flexible adoption" of the transactional, "same subject matter" approach to claim preclusion as set forth in the Restatement (Second) of Judgments:

53

> For while the state's courts have recognized
> and applied the key aspects of that
> basically broad approach--that mere
> differences in legal theories of claim or
> defense, or in remedies sought, or in
> evidence produced, do not create "different"
> claims--the courts also have reflected all
> along considerable skittishness about
> routinely giving the transactional approach
> the widest application conceptually
> possible.

Id. (cleaned up). The Court of Appeals went on:

> Thus, [state courts] have emphasized that
> the transaction test produces a broad res
> judicata effect and so is appropriately
> applied *only when the procedural rules
> afford parties ample opportunity to litigate
> in a single lawsuit, all claims arising from
> a transaction or series of transactions*;
> that the doctrine is not without limits and
> is to be applied in particular situations as
> justice and fairness require; and that the
> test actually defines a process rather than
> an absolute concept. . . . Therefore, to
> treat these two claims as the same for res
> judicata purposes would effectively force
> upon parties situated as is Davenport here a
> preclusive election between two remedial
> paths neither of which would allow fair
> litigation of all claims that otherwise
> properly could be asserted.

Id. at 94, 97 (emphasis added) (cleaned up).[15] That reasoning in

Davenport is parallel to the reasoning in Passaro, where the

Court of Appeals was unwilling to force Virginia litigants to

choose between remedies only available in one proceeding and not

---

[15] As in Passaro, the Fourth Circuit held that issue
preclusion may still apply. Id. at 94 ("But we think the best
evidence from [the state decisions] is that the claims are
viewed as separate, different ones, potentially producing issue
preclusion, but not claim preclusion.").

the other. Notably, although the Davenport decision did
acknowledge that the availability of compensatory damages in §
1983 actions (and not in the state administrative proceedings)
was a factor in differentiating the claims, it gave much less
weight to that specific point than Passaro did. Id. at 95.
Instead, Davenport relied more heavily on formal differences
between the claims themselves:

> [T]he administrative proceeding that was
> invoked here is purely a creature of state
> statute, originating with base-line fact-
> finding by a government agency whose
> decision is subject then to only limited
> judicial review, while the § 1983 action
> involves a full trial with the right to have
> factual issues resolved by a jury. The
> procedural and structural limitations
> imposed by the two processes are such that
> they can't, as a practical matter, afford
> parties such as plaintiff here ample
> opportunity to litigate in a single lawsuit,
> all claims arising from the transaction or
> series of transactions.

Id. at 96 (cleaned up). In sum, Davenport held that a § 1983
claim is structurally different from state judicial review of
state administrative decisions and is thus not barred by res
judicata based on those decisions in and of themselves.

Davenport remains good law in North Carolina. In 2012, the
Fourth Circuit once again applied Davenport in vacating and
remanding the dismissal of Title VII and Americans with
Disabilities Act ("ADA") claims by the district court. Whitaker
v. Nash-Rocky Mount Bd. of Educ., 474 Fed. App'x 912 (4th Cir.

55

2012). The district court had dismissed those counts based on the purported claim-preclusive effect of a North Carolina Superior Court's appellate adjudication of the Nash-Rocky Mount Board of Education's decision not to renew his employment contract. Id. at 913. But the Court of Appeals reversed and remanded for proceedings on those claims. It held that, following Davenport, "North Carolina courts are reluctant to apply the bar of res judicata where the claim in question could not have been raised or fully adjudicated in the initial proceeding." Id. The Court of Appeals once again emphasized the need to "temper[] the broad claim preclusive effect of a pure transactional methodology with case-specific considerations based on prudential and equitable concerns." Id. Furthermore, the court specifically recognized that, under North Carolina procedural law governing North Carolina Superior Court appeals of Board of Education decisions,

> the appeal to the superior court was limited to the evidence before the school board and whether the school board's actions violated North Carolina law. Accordingly, even if Whitaker could have raised his current federal law claims before the superior court, he would have done so *without a right of discovery*, the ability to present relevant evidence, or *the privilege of having his case heard by a jury*. Moreover, due to the procedural incongruities of adjudicating the appeal of a state agency's administrative decision alongside newly raised federal law claims it is unlikely that the superior court would or could have

> allowed Whitaker to join new, federal claims
> with his appeal under [the North Carolina
> procedural law]. Davenport, 3 F.3d at 97
> n.8. Therefore, because Whitaker could not
> have effectively raised or fully adjudicated
> his current claims during his previous
> challenge to the non-renewal of his
> contract, we find that, under North Carolina
> law, they are not barred by res judicata.

Whitaker, 474 Fed. App'x at 914 (emphasis added) (cleaned up).

In other words, similar to the holding in Passaro, procedural

differences between the appeal of the education board's decision

and the Title VII and ADA claims meant that the Title VII and

ADA claims were not res judicata.

These decisions are applicable to the procedural posture of

Garrett's § 1983 claim in this case, either directly or by

analogy. So those decisions and the application of Virginia's

claim preclusion doctrine, together, supply the analysis to be

employed here.

### b. Analysis

#### 1. Claim Preclusion

##### A. Rule 1:6 Would Otherwise Bar Garrett's Claim Under the Doctrine of Claim Preclusion . . .

As discussed, Va. Sup. Ct. R. 1:6 governs claim preclusion

in Virginia and must be applied here. In the papers, the parties

offer confusing legal standards for claim and issue preclusion.

Rule 1:6 has been more neatly interpreted by the Supreme Court

of Virginia to require that: (1) the prior claim be decided on

the merits by a final judgment; (2) the claims be between the same parties; and (3) both claims arise from the same conduct, transaction, or occurrence. Lee, 290 Va. at 247-49. All three of these requirements are met here.

First, the prior claim here was decided on the merits by a final judgment. The Final Circuit Court Opinion addressed the prior claim: the appeal of the Hearing Officer's affirmation of Garrett's firing by VDOC, on the basis that it was contradictory to law. The judgment was final because: (1) following Brooks v. Roanoke Cty. Sanitation, 201 Va. at 936, it completely disposed of Garrett's appeal, requiring no further court action for the effectuation of that disposal; and (2) Garrett himself indicated that he would not seek any further appeal "because the prior ruling from the Court of Appeals [of Virginia] did not give him much hope for a successful appeal and the Virginia Supreme Court had denied his petition for a review of [the Court of Appeals Decision]." PLAINTIFF'S *REPLACEMENT* BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO AMEND ANSWERS, ECF No. 124, at 2. Furthermore, that final judgment was on the merits, notwithstanding that Garrett raised the Fourth Amendment issue for the first time while appealing the Hearing Officer's decision to the Circuit Court, thereby forcing the Circuit Court to rule on that issue on a record that was bare of evidence on the point. Garrett's procedural posture is very similar to that

58

of the Alexander v. Cobb plaintiff, where the prior judgment was on the merits because the court properly "decided the respective rights of the parties" in finding that that plaintiff had failed to carry her burden in an earlier proceeding. 298 Va. at 389. Put another way, the Final Circuit Court Opinion was on the merits because it considered the Fourth Amendment argument, which was "essentially connected with the subject matter of the litigation," following Starbucks Coffee, 61 Va. App. at 241-42, and the opinion "passe[d] directly on the substance" of that argument, following Semtek, 531 U.S. at 501-02. In sum, the Circuit Court substantively passed on the merits of his claim. It did not just dispose of the issue on procedural grounds. Garrett's mere failure to raise the Fourth Amendment at the grievance hearing, and so develop the record on that argument, does not mean that the Circuit Court's finding--that he therefore failed to carry his burden--was not on the merits.

Second, the Final Circuit Court Opinion and the claim in this case are between the same parties. Count II is a claim under § 1983 against Dotson and Stretcher in their official capacities. The appeal of the Hearing Officer's decision was against VDOC. In Brooks v. Arthur, the Court of Appeals implicitly held that individual employees of a state agency are in privity with that agency, under the doctrine of differing capacities, for claim preclusion purposes. See 626 F.3d at 202-

59

203. Accordingly, Dotson and Stretcher, in their official capacities, are in privity with VDOC. Therefore, because the claim against Dotson and Stretcher in their official capacities is, in essence, a claim against VDOC itself, the parties are the same.

Third, both claims arise from the same conduct, transaction, or occurrence. Indeed, this is not much disputed. The Final Circuit Court Opinion arose from Garrett's firing, his appeal of that firing, and his allegation (on appeal) that that firing violated his Fourth Amendment rights. The claim in Count II arises from Garrett's firing and his allegation that that firing violated his Fourth Amendment rights. The two claims therefore clearly "form a convenient trial unit" and "conform[] to the parties' expectations . . . .'" Funny Guy, 293 Va. at 154.

All three of the Lee elements of claim preclusion under Va. Sup. Ct. R. 1:6 are therefore met. To the extent that the parties make other arguments, they are either irrelevant or incorrect. Garrett's argument that, because he filed this federal action before the conclusion of the state court proceedings, temporally, this is not a "subsequent action" in the meaning of res judicata is without merit. ECF No. 139 at 4-5. In no case ever has a court held that a party may escape the strictures of claim preclusion simply by filing a separate suit

60

during the pendency of an earlier, related one. Similarly, Garrett's argument that Rule 1:6 does not cover grievance hearing appeals fails as well. See id. at 6. For one thing, Va. Sup. Ct. R. 1:6 lists complaints, counterclaims, cross-claims, and third-party pleadings as "included" by the rule, which is not an exhaustive indicator. Moreover, it is well-settled that judicial review of agency decisions are prior claims subject to res judicata. See, e.g., Passaro, 935 F.3d at 243; Davenport, 3 F.3d at 89.[16]

Likewise, Garrett's argument that the Final Circuit Court Opinion was not on the merits fails. See ECF No. 139 at 6-7. On its face, a final court opinion that passes on a plaintiff's entire substantive argument cannot have been decided on procedural grounds (or otherwise not have been decided on the merits). For purposes of Rule 1:6, Garrett confuses his failure to raise the argument when he had a chance (at the grievance hearing) with a procedural default auguring in favor of another bite at the apple. Not so. Examples of procedural disposals that are not on the merits are dismissals without prejudice, Oreck Direct, LLC v. Dyson, Inc., 560 F.3d 398, 401 (5th Cir. 2009),

---

[16] Although Davenport held that § 1983 claims are "procedurally and structurally different" from state judicial review of state administrative decisions, 3 F.3d at 96, it did not hold that state court decisions reviewing state administrative decisions are not "prior claims" for purposes of res judicata.

and dismissals for lack of jurisdiction, Malone v. Johnson, 667 F. Supp. 3d 1257, 1267-68 (N.D. Ga. 2023). A final opinion at the conclusion of all procedural and substantive steps and argument, such as the Final Circuit Court Opinion, is hardly akin to either of those. Garrett's attempt to analogize the Final Circuit Court Opinion to the granting of a motion to strike, strained as it is, is no help either. See ECF No. 139 at 7-8. As Defendants correctly point out, even if the analogy stood up (which it does not), a granting of a motion to strike based on insufficient evidence is a final judgment on the merits in Virginia. See ECF No. 140 at 6; Williams v. Shall, 2013 Va. Unpub. LEXIS 1, at *4-5.

So, Rule 1:6 is satisfied here, and Garrett's claim would therefore normally be barred in this Court by claim preclusion. Nevertheless, under Passaro (and Davenport and Whitaker), Count II--Garrett's § 1983 claim against Dotson and Stretcher, in their official capacities, seeking declaratory and injunctive relief--is not barred by claim preclusion.

### B. . . . But Count II Is Not Barred by Claim Preclusion Following Passaro

In Passaro, the Fourth Circuit held that, "if procedural rules prevented the plaintiff from asserting all his claims for relief in a single case, then claim preclusion does not bar the plaintiff from bringing a second case to seek the relief he

could not obtain in the first." 935 F.3d at 249. That is the case here.

At the outset, a major difference between Count II in this case and the claim in Passaro must be acknowledged: the availability of damages. In Passaro, the plaintiff brought his § 1983 claim against State Police Department officials in their individual capacities. However, here, as discussed, Count II (the only remaining count) is against Dotson and Stretcher in their official capacities. The prospective declaratory and injunctive relief sought in Count II against Dotson and Stretcher, regarding the constitutionality of VDOC's drug testing policy, would be permitted under Ex Parte Young if Garrett were reinstated. But damages are not available (unlike in Passaro) because they are not prospective. The question is whether this difference in remedies affects the applicability of Passaro. It does not.

Count II survives claim preclusion because of the reasoning on which Passaro is based. The remedies available in a § 1983 claim against VDOC officials in their official capacities were not available in the state grievance hearing. In Passaro, the court focused on the availability of compensatory damages, but the reasoning was based largely on the Restatement (Second) of Judgments' ideal that the transactional approach to claim preclusion (embodied by Rule 1:6) "assumes no formal barriers"

to a litigant presenting his entire case in the initial litigation. <u>See</u> <u>Passaro</u>, 935 F.3d at 250. These barriers include theories of recovery or demands for relief that were unavailable in said initial litigation. In Garrett's case, he could not have made all the demands for relief he made in this case during his grievance hearing.

At the grievance hearing, the Hearing Officer was bound by the Virginia statutory scheme governing the grievance proceedings, Va. Code § 2.2-3000 *et seq.*, and Section Five of the Grievance Manual. Although the Hearing Officer could award reinstatement, back pay, reinstatement of benefits and back benefits, mitigation or reduction of disciplinary action, and reasonable attorney fees under Va. Code § 2.2-3005.1, the Hearing Officer did not have the authority to prospectively declare VDOC's drug testing procedures unconstitutional or enjoin them--the relief sought in Count II. This is because Section 5.9 of the Grievance Manual expressly provides that a Hearing Officer may not grant relief that is "inconsistent with law, policy, *or the grievance procedure*." Specifically, Section 5.9(b) explicitly forbids a Hearing Officer from "revising policies, procedures, rules or regulations," "[d]irecting the methods, means or personnel by which work activities are to be carried out," or granting any other relief that goes against the grievance statutes or state policy. Furthermore, at no point

64

during the grievance hearing or on appeal of the grievance decision would Garrett enjoy his right to a jury trial--another difference the Court of Appeals held was material between the two claims in Passaro.

This ruling is consistent with other Fourth Circuit case law. In Davenport and Whitaker, the Court of Appeals applied North Carolina law, thereby rendering both cases useful by analogy. And, Davenport and Whitaker are highly analogous to this case. Indeed, as in Davenport, the grievance proceeding invoked here too is purely a creature of state procedural statute, with minimal fact-finding by a government agency and limited judicial review. See Davenport, 3 F.3d at 96. A § 1983 action is, by contrast, an opportunity for a full trial with the right to have a jury decide factual issues. "The procedural and structural limitations imposed by the two processes are such that they can't, as a practical matter, afford parties such as [Garrett] ample opportunity to litigate in a single lawsuit, all claims arising from the transaction or series of transactions." Id.

Garrett's arguments that Passaro renders his claim not barred by claim preclusion are therefore mostly correct. His arguments that grievance hearings are "informal" compared to civil suits and that constitutional challenges and § 1983 claims themselves are not expressly provided by statute as possible

grounds for appeal carry no water. ECF No. 139 at 9. But his contention that the Grievance Manual's restriction on the available relief with respect to the constitutionality of VDOC's drug testing procedures and his Fourth Amendment rights is correct. Id. at 10-11. By contrast, Defendants' arguments that the Hearing Officer could have declared VDOC's procedures unconstitutional, and that the state appellate courts could have enforced that declaration by judicial review, are mistaken. ECF No. 140 at 12. Defendants also argue that this Court has given preclusive effect to other Hearing Officers' decisions before, citing Hurdle v. Va. Dep't of Env't Quality, No. 3:01-cv-259, 227 F. Supp. 2d 549 (E.D. Va. Sept. 25, 2002) and Martin-Bangura, 640 F. Supp. 2d at 729. ECF No. 140 at 8. But Hurdle was decided on collateral estoppel grounds, and Martin-Bangura was expressly overruled by Passaro. Hurdle, 227 F. Supp. 2d at 562-65; Passaro, 935 F.3d at 249.

Passaro represents a change in the law. Before Passaro, but after the enactment of Rule 1:6, this Court has reached opposite holdings on similar facts. But the Court of Appeals has instructed courts in this Circuit that claim preclusion does not bar a claim where a litigant was prevented by procedural rules from presenting every claim for relief in the initial action. Procedural prohibitions include where theories of recovery or demands for relief were available in one proceeding but not the

other. Here, that is the case. If Count II of Garrett's Amended Complaint was barred by the Final Circuit Court Opinion, Virginia employees in his position would have to choose between the federal protection of constitutional rights provided by § 1983 on the one hand, and the only means by which his or her employment discipline could be reversed on the other. That is not a fair or equitable end contemplated by the doctrine of res judicata.

### 2. Issue Preclusion

Having decided that Count II in this case is not barred by claim preclusion, the analysis turns next to the separate question of issue preclusion. Issue preclusion bars Count II because the issue, whether Garrett's Fourth Amendment rights were violated, was actually litigated in, and essential to, the Final Circuit Court Opinion.

Collateral estoppel, the more common form of issue preclusion, is the form of issue preclusion that applies here. This is because the current suit does not represent a split claim or a claim that otherwise forms part of the original claim for relief, which would trigger the doctrine of direct estoppel. See Davenport, 3 F.3d at 93-94. Instead, this is a subsequent claim, triggering collateral estoppel.

The party seeking application of the doctrine of collateral estoppel must establish that the parties are the same, that the

issue of fact sought to be litigated was actually litigated before in a prior judgment, that the decision of that issue was essential to that prior judgment, and that the prior judgment was valid and final as against the party against whom the doctrine is sought to be applied. Lane, 297 Va. at 654-55. Here, the sameness of parties and validity and finality of the Final Circuit Court Opinion have been established. The remaining questions are whether the issue of fact presented here--whether Garrett's rights under the Fourth Amendment were violated--was "actually litigated" in the course of the prior judgment and whether the determination of that issue was essential to the prior judgment.

The Fourth Amendment issue was actually litigated in the Final Circuit Court Opinion and was essential to that judgment. Garrett raised the Fourth Amendment argument on appeal from the grievance hearing. He thereby made an allegation against VDOC that its procedures, the alleged violation of which resulted in his firing, were not in keeping with the law. On remand from the Court of Appeals of Virginia, the Circuit Court fully considered that argument. In performing that consideration, the Circuit Court held that there was "'scant information' in the initial record that [was] relevant to the issue of whether or not Grievant's position was 'safety-sensitive.' As such, Grievant did not carry his burden to establish that the Hearing Officer's

68

decision was contradictory to law as required by Va. Code § 2.2-3306 [sic]." The Circuit Court therefore clearly "had an opportunity to pass judgment on the sufficiency of the factual allegations at issue in the case." Hately, 97 F.3d at 780. It was an issue "actually raised" and decided, not just "lurking in the background of the record." Fofana, 4 F.4th at 671. Moreover, the issue was the sole basis for the Circuit Court's affirmance of the Hearing Officer's decision. The issue was therefore clearly essential to the judgment.

Garrett's position that the issue was not actually litigated because he failed to carry his burden at the grievance hearing is wrong. An issue is not actually litigated where it is not substantively passed on by a final, valid decision. The Final Circuit Court Opinion could not have been clearer that it substantively decided the issue. That issue was Garrett's burden to prove at the point during the proceedings where he was able: the grievance hearing. "Every litigant should have opportunity to present whatever grievance he may have to a court of competent jurisdiction; but having enjoyed that opportunity and having failed to avail himself of it, he must accept the consequences." Miller v. Smith, 109 Va. 651, 655 (1909).

Because the sole issue related to Count II was the Fourth Amendment issue, and that issue is barred by collateral estoppel, "it appears certain that the plaintiff cannot prove

any set of facts in support of his claim entitling him to relief." Drager, 741 F.3d at 474. Therefore, even if Garrett were to amend his complaint to escape mootness, it would still fail, meaning amendment would be futile.

## CONCLUSION

For the foregoing reasons, this case will be dismissed as moot because there is no longer a case or controversy and there is no longer subject matter jurisdiction. Accordingly, the RULE 12(c) MOTION (ECF No. 135) will be denied as moot. PLAINTIFF'S MOTION TO AMEND COMPLAINT (ECF No. 146) will be denied because amendment would be futile.

It is so ORDERED.

_____ /s/ _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 2, 2023

70